J. J. THEATRES, Inc. et al.

v.

TWENTIETH CENTURY–FOX
FILM CORP. et al.

No. 95, Docket 22841.

United States Court of Appeals,
Second Circuit.

Argued Jan. 5, 1954.

Decided May 12, 1954.

See also D.C., 112 F.Supp. 674.

Monroe E. Stein, New York City, for plaintiffs-appellants (Hess, Mela, Segall, Popkin & Guterman, by Lionel S. Popkin and Robert L. Pelz, New York City of counsel).

Dwight, Royall, Harris, Koegel & Caskey, New York City, for defendants-appellees Twentieth Century-Fox Film Corp. and Spyros P. Skouras (Frederick W. R. Pride, Charles F. Young and Barbara A. Scott, New York City, of counsel).

Sherpick, Gilbert, Regan & Davis, New York City, for defendants-appellees Skouras Theatres Corp. and George Skouras (Eugene A. Sherpick, Richard T. Davis and William C. Woodson, New York City, of counsel).

Before CHASE, Chief Judge, CLARK, Circuit Judge, and GIBSON, District Judge.

CHASE, Chief Judge.

The appellants, who are the operators of the Luxor Theatre, a motion picture theatre at 208 East 170th Street in the Bronx, in the Southern District of New York, alleged in their complaint, as amended, a conspiracy by the appellees in violation of the anti-trust statutes, §§ 1, 2, 15 and 26 of Title 15 U.S.C.A., to deprive the appellants of "first-run" pictures for exhibition in their theatre and to restrict them to subsequent runs following unreasonable "clearances" [1] in favor of another theatre in the Bronx called the Park Plaza Theatre. Trial was by jury which returned a verdict for the defendants and this appeal is from the judgment entered thereon. Asserted errors in the charge and in the admission and exclusion of evidence are urged as the grounds for reversal.

The Luxor Theatre was leased by the appellant, J. J. Theatres, Inc., on March 16, 1941, and was operated by that lessor until June 30, 1944, when the appellant Luxor Group, Inc., became its sub-lessee. Since then the sub-lessee has operated it

---

1. "Clearance" is the period of time which must elapse between runs of the same picture in a designated area or in designated theatres within such area and is usually a condition in the contracts under which the exhibition of the picture is licensed.

and also some twelve other theatres leased by it in the Bronx.

The appellee, Skouras Theatres Corporation, is the operator of some fifty motion picture theatres in the New York metropolitan area including the Park Plaza Theatre located at the southwest corner of Tremont Avenue and University Avenue in the Bronx, a little over a mile from the Luxor Theatre by one available route and a little over a mile and a half by another. The appellee, Spyrous Skouras, was formerly the president, and until 1948 was a director of Skouras Theatres Corporation and at all times now material has been a large stockholder in it. Since 1942 he has been the president of appellee, Twentieth Century-Fox Film Corporation. He is a brother of appellee, George Skouras, who was president of appellee, Skouras Theatres Corporation from 1935 to 1952 and at all material times has been a director of that corporation, holding a sizable amount of its stock.

Warner Bros. Pictures Distributing Corporation, RKO Radio Pictures, Inc., Universal Film Exchanges, Inc., and Universal Pictures, Inc., which are large producers and distributors of motion pictures were added by an amendment to the complaint in the pre-trial order as co-conspirators but not as defendants and also so named were RKO Theatres, Inc., and Radio-Keith Orpheum Corp., which operated theatres in a chain called the RKO Circuit.

The conspiracy was charged in the complaint to have affected the plaintiffs differently in each of two periods. In the first period, which runs from March 15, 1941 to February 9, 1949, it was alleged that as a result of the conspiracy all the co-conspirators named refused unreasonably to license the appellee's Luxor Theatre to exhibit the feature motion pictures distributed by any of them on what is called a non-exclusive neighborhood first run. During the second period, which runs from February 10, 1949 to February 5, 1952, there was no refusal to license the Luxor Theatre to exhibit any feature pictures on a basis unsatisfactory to the appellants save those distributed by Twentieth Century-Fox. During both periods the distribution of neighborhood first run pictures in the New York area was divided into what was called the Loew split and the RKO split, the former including the pictures distributed by Loew's Columbia, Paramount, United Artist and one-half of Universal's distribution and the first neighborhood run of pictures in this split was only in Loew theatres. The RKO split, which is the one involved in this suit, consisted of the pictures distributed by Twentieth Century-Fox, Warner Bros., RKO, and the other half of Universal's distribution.

■ The principal contention of the appellants at the trial was that the admitted refusal to license the exhibition of feature motion pictures at the Luxor Theatre on a non-exclusive neighborhood first run basis was an unreasonable restraint of trade because that theatre was not in substantial competition with the Park Plaza Theatre. Considerable evidence was received on the subject of the competitive status of these two theatres and on the whole was such that the jury could justifiably have found either that they were in substantial competition during one or both of the periods involved in this suit or that they were not in either period, but for the purposes of this appeal we must assume that the jury found that they were during both periods. So we find it unnecessary in the present aspect of the case to lengthen this opinion by a recital of the evidence on that subject.

The trial judge well and clearly gave the jury to understand that the burden was on the appellants to prove by at least a preponderance of the evidence that the prior run and clearance in favor of the Park Plaza over the Luxor was unreasonable and charged correctly in this respect as to the other elements which they had so to prove to entitle them to a verdict. He also charged that: "If you find there

was substantial competition between the two theatres, then plaintiffs have failed to establish the element that the prior run and clearance in favor of the Park Plaza over the Luxor was unreasonable and your verdict should be for the defendants." He thus made a finding of no such competition a condition precedent to a finding of unreasonable restraint of trade that would support a plaintiffs' verdict.

The appellants took an exception to that part of the charge and to the refusal of requests to charge which they had timely made to the effect that though their principal contention was that the Luxor and the Park Plaza were not in substantial competition a finding that they were was "not necessarily fatal to the plaintiffs' case." And that they could recover if the jury found that the "defendants and the alleged conspirators, or some of them, acted in concert to refuse first neighborhood run films on the RKO split for exhibition at the Luxor Theatre and that the Luxor was a "representative first-run neighborhood theatre" in the area; and that "the defendants and co-conspirators or some of them agreed that none of the distributors of pictures on the RKO split would either license pictures to the Luxor Theatre on a first neighborhood run or negotiate on any terms with the plaintiffs for a first neighborhood run at the Luxor Theatre. * * * "

The judge explained his refusal to charge as requested by saying: "Well, with respect to your revised requests to charge, 33, 34 and 34A, I have advised you that my refusal to charge was based on the fact that the case was brought on the theory that the theatres were not in substantial competition; the basic pleadings were so drawn; the evidence in the case offered by the witnesses on behalf of the plaintiffs indicated that; all the conversations had from 1941 to 1948, and the letters sent in June, 1948, were to the effect that the move-up was sought on the basis that the theatres were not in substantial competition, and in 1949, as I recall it, on one occasion when there was a suggestion that there might be bidding as between the two theatres, Klein indicated that he would not bid on behalf of the Luxor because he urged that the theatres were not in substantial competition. And it has been clear from the start of the case that that was the basis upon which it was tried and that is the only evidence submitted in the case."

In limiting the submission of the case to the jury on the plaintiffs' principal theory that there was no substantial competition between the two theatres and making a finding in accord with that theory essential to any recovery, the judge was led inadvertently into error, we think, by the great emphasis which had been put upon that phase of the case. As a matter of law, if it were pleaded and proved that the defendants had conspired to deprive the Luxor Theatre of pictures for exhibition on a first neighborhood run by refusing to negotiate with the plaintiffs on any terms for such a run, even though that theatre and the Park Plaza Theatre were in substantial competition, the conspiracy might have unreasonably restrained trade in violation of the anti-trust statutes. See U. S. v. Paramount Pictures, D.C., 66 F.Supp. 323, affirmed in part and reversed in part and remanded, 334 U.S. 131, 68 S.Ct. 915, 92 L.Ed. 1260, and U. S. v. Paramount Pictures, D.C., 85 F.Supp. 881, affirmed 339 U.S. 974, 70 S.Ct. 1032, 94 L.Ed. 1380. Also Theatre Enterprises, Inc., v. Paramount Film Distributing Corp., 346 U.S. 537, 74 S.Ct. 257. So limiting liability to a situation where the theatres were shown not to have been in substantial competition can only be justified if the record supports the conclusions stated by the judge when he denied the requests to charge. See, Bordonaro Bros. Theatres v. Paramount Pictures, 2 Cir., 176 F.2d 594. We shall now turn to that.

The amended complaint consists of 43 paragraphs in one of which, No. 23, the sole allegation is that the two

theatres were not in substantial competition with each other for patronage. But in other paragraphs it is alleged that distributors granting priority of run to one theatre over another are justified in so doing only when guided by legitimate business reasons such as that because of the location of the theatre given priority, its appointments, the skill and experience of its operators and other factors, it is the one more likely to be able to pay a larger rental and that it will pay a larger rental; that the "Luxor Theatre playing the features of the defendant distributor on a non-exclusive run in the Borough of Bronx, City of New York is able to and will pay larger film rental for the exhibition of those pictures of the defendant Park Plaza Theatre exhibiting the defendant distributor's pictures on the same run, and the plaintiffs have advised the defendant distributor of this fact and of its (sic) willingness to guaranty the said film rental." It was also alleged that,

"The defendant Fox has refused to negotiate with the plaintiffs for the exhibition of the features distributed (sic) by them respectively at the Luxor Theatre on a non-exclusive first run on any terms whatsoever. The plaintiff, J. J. Theatres, Inc., from March 15, 1941 to June 30, 1944, and the plaintiff Luxor Group, Inc., since July 1, 1944, have many times advised the defendants of its (sic) desire and willingness to negotiate for the first said run at the Luxor Theatre without clearance over the Park Plaza Theatre (which the plaintiffs prefer and believe is the proper method of distribution) or on a competitive basis or otherwise for a run with clearance over the Park Plaza Theatre if the said defendant has refused to enter into any negotiations, competitive or otherwise, for any such run."

In view of the above we should, and do, treat the complaint as alleging adequately (1) the principal claim of the plaintiffs that the refusal of the defendant Fox, pursuant to the conspiracy, to license the exhibition of its feature pictures at the Luxor Theatre on a first run neighborhood basis without clearance over the Park Plaza Theatre was an unlawful restraint of trade because the two theatres were not in substantial competition for patronage; and (2) the secondary claim that it unlawfully refused to negotiate with them, as the operators of a theatre in substantial competition with the Park Plaza Theatre, for any such run at their theatre on any terms whatever. But even if this had not been so, that would not have foreclosed the plaintiffs' right to have the case submitted to the jury on what we have called their secondary claim for, if the evidence was sufficient to require such submission, any apparent pleading block might have been removed under Rule 15(b), Fed.Rules Civ.Proc., 28 U.S.C.A., by amending the pleadings to conform them to the proof.

■ The defendants rested at the close of the plaintiffs' evidence. That evidence, though to a large extent concerned with whether or not there was substantial competition between the two theatres, covered much more ground than that. It tended to show also the suitability of each theatre for the exhibition of first run feature pictures from the standpoint of location, potential patronage, size, appointments, management, admission prices, surrounding transportation facilities, maintenance, and the like. This evidence was such that the jury might justifiably have found that the Luxor Theatre was suitable for the exhibition of feature pictures on a first run non-exclusive basis and that if actuated by legitimate business reasons alone a distributor would have selected that theatre for such licensed exhibitions of feature pictures. To this extent the evidence did require the submission of the secondary claim of the plaintiffs in sub-

stantial compliance with the requests to charge.

■ Whether such submission should have covered both periods presents another question, however, for the plaintiffs cannot recover damages on account of any failure to obtain feature pictures for first-run exhibition unless they made demand for that of which they now claim they were deprived by the conspiracy. Milwaukee Towne Corp. v. Loew's Inc., 7 Cir., 190 F.2d 561, certiorari denied 342 U.S. 909, 72 S.Ct. 303, 96 L.Ed. 680.

■ As to the period from February 25, 1949, to the date of the suit there can be no doubt as to the making of the necessary demand to support what we have herein called the plaintiffs' secondary claim. On that date, J. J. Theatres, by Harold J. Klein, wrote a Mr. Florin, who represented the defendant distributor, that it wished to negotiate for a license to exhibit two motion pictures named for a seven day run commencing on "the first day on which said pictures are being made available for exhibition in the Bronx."

"Should you determine that the Luxor Theatre is in competition with any other Theatre for first run patronage in the Bronx, and that you will license a first run to only one of these 2 (two) Theatres we are herewith requesting that you enter into competitive negotiations with us for first run at the Luxor Theatre.

"This letter is written without relinquishing any rights we may have had in the past and without being an admission on our part that the Luxor Theatre is in competition with any Theatre for first run patronage in the Bronx."

This letter was followed by one of like tenor on March 2, 1949, requesting the negotiation of a license to exhibit another first run picture and by one on March 29, 1949, making the same request as to another picture and adding, "Until further notice from us please consider that the request embodied in this letter shall apply to all pictures released by you."

Before the date of the first of these letters, the demands the plaintiffs had made upon the defendant distributor, so far as shown by this record, for the licensing of non-exclusive first run exhibitions of pictures at the Luxor Theatre were coupled with the assertion that it was not in substantial competition with any prior run theatre in the Bronx. They included, however, either expressly or by necessary implication, the demand that all existing clearances over the Luxor Theatre be eliminated.

■ As the above mentioned assertion of the non-competitive position of the Luxor Theatre is presently to be treated as one contrary to fact, the question arises whether in respect to the period antedating February 25, 1949, the demands by the plaintiffs for the licensing of first neighborhood runs of pictures on a non-exclusive basis was limited by the reason given for making it to one contingent upon the existence of non-competition. We think not. They put the defendant distributor on notice that the stated kind of licensing was requested. In determining whether to comply with such a definite demand for a definitely stated kind of licensing no relevant factors were excluded by the language of the demand and it was called upon to act on the basis of whatever considerations it saw fit to let influence its decision. Since the demands served that purpose they were sufficient for the entire period following the making of the initial one.

As this requires a remand for a new trial covering both periods we do not reach the other points for reversal urged by the appellants. As the case was tried this time we find no error as to them and as the situation on the retrial may be a differing one in some respects we feel that no good purpose would be served by discussing them now.

Judgment reversed and cause remanded.