263 F.2d 533
 WEBSTER ROSEWOOD CORPORATION, Appellant,
v.
SCHINE CHAIN THEATRES, INC., a New York Corporation; Schine Theatrical Co., Inc., a New York Corporation; Schine Circuit, Inc., a New York Corporation; Schine Lexington Corporation, a New York Corporation; and
J. Myer Schine, Louis W. Schine, and John A. May; all of Gloversville, New York, Appellees.
 No. 139.
 Docket 25036.
 United States Court of Appeals Second Circuit.
 Argued January 14, 1959.
 Decided February 13, 1959.
 
 Francis T. Anderson, Philadelphia, Pa., for appellant, Cormac J. Malloy, Gray, Schaffer & Malloy, Philadelphia, Pa., of counsel.
 James O. Moore, Jr., Raichle, Tucker & Moore, Buffalo, N. Y., for appellees, David C. Diefendorf, Buffalo, N. Y., of counsel.
 Before HAND, LUMBARD and BURGER, Circuit Judges.
 HAND, Circuit Judge.
 
 
 1
 The plaintiff appeals from a judgment of Judge Foley, dismissing its complaint demanding treble damages for violation of the antitrust laws (§ 15, Title 15 U.S. C.A.). The action was tried to the judge who delivered an elaborate opinion reported in 157 F.Supp. 251, 259, to which we refer as the supplement to what we say. The claim in suit arose from an alleged injury to the plaintiff, the corporate owner of a moving picture house in the City of Rochester, called "The Webster," whose shares were held by one, Max Fogel. The gravamen of the claim was that the defendants between June, 1942, and May, 1950, by virtue of their monopolistic control over moving picture "distributors," succeeded in preventing "The Webster" from receiving "first neighborhood run" of films; and that during this period another theatre, known as the "State" and controlled by the defendants, always got the "first neighborhood run," although "The Webster" was as good, and as well situated as the "State." After extended hearings consisting in large part of the testimony of Fogel himself, the judge made the following findings of fact at the close of his opinion: (1) that the evidence did not disclose any conspiracy to monopolize films between 1942 and 1950, and arbitrarily to deprive the plaintiff of "first neighborhood run." (2) That the evidence rebutted "any presumption or inference" of the continuance during 1942 to 1950 of the conspiracy of which the defendants were found guilty by the Supreme Court in Schine Chain Theatres, Inc. v. United States, 334 U.S. 110, 68 S.Ct. 947, 92 L.Ed. 1245. (3) That the plaintiff had made no demand upon distributors for any first neighborhood run of the films shown at the "State" theatre. (4) That the evidence did not show that "The Webster" "was clearly a better customer * * * than the State and that a different pattern of distribution would have been more to the interests of the distributors and thus allow an inference of conspiracy."
 
 
 2
 Judge Foley described at length the dealings between Fogel and the defendant J. Myer Schine, beginning shortly after Fogel built "The Webster" in 1927, a year after defendants' "State" theatre was built. The two theatres were six blocks apart and continued either in competition or cooperation until 1933 when Schine abandoned an interest that he had acquired in "The Webster." Fogel kept on alone until the autumn of 1940 when Schine took control and Fogel became his employee. In June, 1942, Fogel reacquired his interest in "The Webster" and the period of alleged injury began. Meanwhile, the United States had brought the action of which we have spoken under the antitrust laws which was finally determined by the Supreme Court on May 3, 1948, and in which the court held that a chain of about 148 motion-picture theatres located in 76 towns and in six states was controlled by the defendants, and had been operated in violation of the antitrust laws. This action had been brought in the District Court for the Western District of New York and in it Judge Knight made the following finding which was affirmed by the Supreme Court:
 
 
 3
 "All findings made herein with respect to any acts committed by the defendants or any of them, or any course of conduct pursued by them which the Court holds to be in violation of the antitrust laws are limited to acts committed or course of conduct pursued prior to May 19, 1942, plaintiff's counsel having stated at the opening of the trial that he would not offer evidence beyond that date."
 
 
 4
 Judge Foley held that this finding limited the "prima facie estoppel" of the judgment of the Supreme Court under § 16 of Title 15 U.S.C.A. to the period before May 19, 1942, and therefore to a period before the beginning of that for which the plaintiff demanded damages. There can be no doubt that this was a proper interpretation of the statute (Theatre Enterprises v. Paramount Film Distributing Corp., 346 U.S. 537, 541, 543, 74 S.Ct. 257, 98 L.Ed. 273). Congress by choosing the word, "estoppel," indicated that it meant the judgment to have no greater effect, even prima facie, between individuals than that effected by an "estoppel" under the ordinary doctrine of res judicata; and it is too well settled to require citation that the effect of an estoppel is confined to the facts actually adjudicated. Therefore, the decree in the Government suit had no evidential effect beyond Judge Knight's finding.
 
 
 5
 There remains the question whether the existence of such a conspiracy until May 19, 1942, might be the basis of an inference that it continued thereafter. We do not mean to suggest that, even if this be a permissible inference, it would make "clearly erroneous" Judge Foley's first finding that the plaintiff did not show that the defendants made any "unlawful use of monopoly" after May 19, 1942; but the situation is not even as favorable to the plaintiff as that. An order, pendente lite, was entered, apparently in May, 1942, by which the defendants were directed to dispose of the interest they then had in "The Webster," and this they did. It is of course conceivable that after surrendering control of that theatre in pursuance of this order they began to discriminate against it, though the surrender had been in compliance with an order in the Government suit; but in the face of both the surrender and the continued existence of the Government suit, we cannot agree that the decree in that suit served as a basis for supposing that the conspiracy found to have then existed continued, at least as to "The Webster." Be that as it may, the plaintiff had the burden of proving that the conspiracy in fact did continue and the judge's reasons for discrediting the plaintiff's testimony make impossible a reversal of his first and second findings.
 
 
 6
 Furthermore, he found that there was "no credible evidence to convince that the Webster was clearly a better customer from the distribution point of view than the State and that a different pattern of distribution would have been more to the interests of the distributors and thus allow an inference of conspiracy." Read strictly, it is true that this finding does not necessarily justify the uniform preference of the "State" theatre in the distribution of films; as it would have if the "State" theatre were the better customer of distributors, though we should have been tempted to read it as meaning that the "State" theatre was the "better customer," even if the finding stood alone. However, when we read it with the following passage from the opinion all doubt disappears.
 
 
 7
 "The testimony of the top men in the distribution part of the movie industry was unhesitatingly to the effect that the State was a better theatre for the location and revenue than the Webster and this testimony was also reliable and factual, as was that of McKay, then general counsel for Schine, that there was never any agreement or meeting of the minds to deprive the Webster of first neighborhood run if it wanted it."
 
 
 8
 Finally, we can see no answer to the defendants' argument that there was no proof that Fogel ever demanded "first run" films on an equality with the "State" theatre; and in J. J. Theatres, Inc. v. Twentieth Century-Fox Film Corp., 2 Cir., 212 F.2d 840, we held (following the Seventh Circuit, Milwaukee Towne Corp. v. Loew's, Inc., 190 F.2d 561), that such a demand was a necessary condition of any claim for relief. We repeat what we said in that case, 212 F.2d at page 845: "The plaintiffs cannot recover damages on account of any failure to obtain feature pictures for first-run exhibition unless they made demand for that of which they now claim they were deprived by the conspiracy."
 
 
 9
 Judgment affirmed.