ROYSTER DRIVE-IN THEATRES, INC.,
Plaintiff-Appellant,

v.

AMERICAN BROADCASTING–PARA-
MOUNT THEATRES, INC., et al.,
Defendants-Appellees.

No. 200, Docket 25379.

United States Court of Appeals
Second Circuit.

Argued March 11, 1959.

Decided June 8, 1959.

Francis T. Anderson, of Gray, Schaffer & Malloy, Philadelphia, Pa. (Cormac J. Malloy, of Gray, Schaffer & Malloy, Philadelphia, Pa., on the brief), for appellant.

Albert C. Bickford, of Simpson, Thacher & Bartlett, Frederick W. R. Pride, of Royall, Koegel, Harris & Caskey, E. Compton Timberlake, and Myles J. Lane, of Schwartz & Frohlich, New York City (Whitney North Seymour, Jr., of Simpson, Thacher & Bartlett, John F. Caskey and Leonard Stecher, of Royall, Koegel, Harris & Caskey, Bernard E. Kalman, Louis Phillips, New York City, and Everett A. Frohlich, New York City, and Bernard R. Sorkin, Brooklyn, N. Y., of Schwartz & Frohlich, New York City, on the brief), for appellees.

Before WASHINGTON,* WATERMAN and MOORE, Circuit Judges.

WASHINGTON, Circuit Judge.

This is an action brought under Sections 1 and 2 of the Sherman Antitrust Act, 26 Stat. 209 (1890), as amended, 15 U.S.C.A. §§ 1, 2. Plaintiff-appellant sought treble damages and an injunction under Sections 4 and 16 of the Clayton Act, 38 Stat. 731, 737 (1914), 15 U.S.C.A. §§ 15, 26.

Plaintiff-appellant is the operator of a motion picture theatre in Peekskill, New York, known as the Peekskill. Defendants-appellees are (1) American Broadcasting-Paramount Theatres, Inc. (AB-PT), the operator of the Paramount motion picture theatre in Peekskill and a competitor of the plaintiff, and (2) seven major motion picture distributors— Paramount, Warner Brothers, Fox, Loew's, RKO, Columbia, and United Artists. Plaintiff alleged that defendants had conspired to monopolize and in fact had actually monopolized the motion picture exhibition business in Peekskill by having wrongfully withheld from plaintiff and having awarded to plaintiff's competitor the great bulk of the more desirable motion pictures.

The case was tried before the court without a jury. At the close of plaintiff's case, defendants moved for a dismissal of the complaint and entry of judgment for defendants under Fed.R. Civ.P. 41(b), 28 U.S.C. The judge made findings of facts and conclusions of law and entered a formal order dismissing the complaint and entering judgment for the defendants. This appeal followed.

Briefly, the basic findings of the trial court were as follows:

*April 1950–September 30, 1950:* On April 5, 1950, AB-PT, pursuant to the divestment decree in a civil antitrust action involving Paramount Pictures,[1] sold the Peekskill Theatre. Plaintiff was the purchaser. Previously AB-PT had owned both the Paramount and Peekskill

---

* Sitting by designation pursuant to 28 U.S.C. § 294(a).

1. United States v. Paramount Pictures, Inc., D.C.S.D.N.Y.1949, 85 F.Supp. 881, on remand from Supreme Court, 1948, 334 U.S. 131, 68 S.Ct. 915, 92 L.Ed. 1260, affirming in part D.C.S.D.N.Y.1946, 66 F.Supp. 323 and 70 F.Supp. 53.

Theatres in Peekskill. The Paramount Theatre had always been a top-class theatre and had always shown top quality films. Prior to April 6, the Peekskill had been in a state of disrepair and had generally exhibited slough pictures, reissues, repeats, and C-grade films. Following the purchase of the Peekskill, plaintiff began to repair and renovate it.

The trial court found that from April 17, 1950, until May 15, 1950, the defendants-appellees "agreed and conspired with each other to withhold from plaintiff's Peekskill Theatre a fair and reasonable supply of pictures," the purpose and effect of the conspiracy being "to prevent plaintiff's theatre from competing effectively with the Paramount Theatre * * * during such period." It may be noted parenthetically, however, that plaintiff seeks damages only for a later period, namely, from September 30, 1950, to August 4, 1954, the date this suit was commenced.

On May 15, 1950, plaintiff retained an agent to license and book its motion pictures. The agent booked various pictures for the plaintiff during the summer of 1950. A few days prior to September 15, 1950, plaintiff and its agent advised AB-PT that it wanted a share of "A" films, and that if it did not get an "A" product it was going to ask the distributors for competitive bidding. On September 15, 1950, the agent wrote letters to several of the distributor defendants requesting either a split of product or competitive bidding. The distributors thereupon inaugurated competitive bidding and offers were solicited from plaintiff and AB-PT on some pictures. On September 30, 1950, plaintiff finally completed renovating the Peekskill.

*October 1, 1950–December 1951:* In October 1950, the plaintiff and its agent met with AB-PT and agreed that the Peekskill Theatre would try out an arrangement to split the film product, under which the plaintiff would negotiate for the pictures which had played or would play at the Stratford Theatre (owned by AB-PT) in Poughkeepsie. Because of this arrangement, plaintiff shortly thereafter withdrew its requests to the distributors for competitive bidding. For the next six months, plaintiff was quite happy with the film-split arrangement. It requested no different product for the Peekskill Theatre.

In April 1951, AB-PT advised plaintiff that the Paramount Theatre in Peekskill needed more pictures and would start taking some from the Stratford product. The arrangement was therefore terminated.[2]

*December 1951–October 1952:* In December 1951 and January 1952, plaintiff again wrote to the various distributor-defendants requesting competitive bidding. Each distributor afforded plaintiff an opportunity to bid competitively for each picture for first-run exhibition in Peekskill. For several months the bidding continued. There was no evidence that AB-PT ever overbid for any picture.

In April 1952, plaintiff again approached AB-PT in order to work out some "split" arrangement whereby competitive bidding would once more be eliminated. AB-PT and plaintiff again agreed to a split of product, and shortly thereafter plaintiff notified the distributor defendants that it wished to terminate competitive bidding. By this time plaintiff's economic position had become extremely difficult, partly because of the increase of television sets in the Peekskill area during the period of plaintiff's operation, partly because of a number of changes in the competitive situation in Peekskill such as the opening of new

2. The trial court stated that no evidence was adduced as to the manner in which licenses for the exhibition of motion pictures in Peekskill were negotiated during the period from April 1951 to December 1951. Actually, however, the testimony seems to indicate that during that period plaintiff's agent made inquiry of AB-PT from time to time as to the pictures which the latter wanted, and those it did not want, for the Paramount Theatre. The information was supplied to him. The matter does not appear controlling under our view of the case.

drive-in theatres, and partly because of the increase of plaintiff's expenses after the renovation of the Peekskill during a period of declining grosses. Finally, on October 11, 1952, plaintiff closed the Peekskill Theatre and has never operated it since that time.

From the facts adduced, the court made four basic findings:

(1) There was no evidence of any vertical or horizontal conspiracy in violation of the Sherman Antitrust Act after May 15, 1950.

(2) Whatever conspiracy may have existed up until September 15, 1950, was fully terminated "when plaintiff demanded and was accorded the right to bid competitively for the pictures of the defendant distributor." In this regard, not only was competitive bidding [3] "available to the plaintiff at all times during the period of plaintiff's operation for each picture of each defendant-distributor," but also such bidding "was truly competitive and neither exhibitor knew the offers made by the other exhibitor." Despite the opportunity for competitive bidding, however, plaintiff avoided such an arrangement at all times during its operation when it thought it could get pictures for exhibition in any other way.

(3) Apart from the actual periods of competitive bidding, plaintiff never communicated with any distributor concerning the licensing or booking of any motion picture, either before the requests for competitive bidding were made or after the requests for competitive bidding were withdrawn. Indeed, the court found no evidence that, after the renovation of the theatre, "plaintiff * * * ever made any demand to any distributor, which demand was refused." This failure to make a demand was therefore "fatal to the plaintiff's claim" since it clearly indicated that "the arrangements voluntarily made by plaintiff were satisfactory to it."

(4) Finally, plaintiff "failed to prove that it suffered any damage as the result of any act of the defendants or any of them in violation of law, and * * * to prove the amount of its damages, if any."

I.

 Appellant claims that the court erred in finding that the conspiracy which existed up to May 15, 1950, was confined to that period. Therefore, appellant argues, the court also was in error in finding that (1) there was no unlawful conspiracy after May 15; (2) even if such conspiracy existed, it terminated when competitive bidding was allowed; and (3) even if a conspiracy continued, it was not the proximate cause of any legal injury to plaintiff giving rise to any claim for damages. Appellant finally claims that findings relating to the period from April 1952 were inadequate.

Our review of the record, however, does not lead us to the conclusion that the trial court's findings of fact are clearly erroneous. See Fed.R.Civ.P. 52(a). On the contrary, we think they are—over-all—adequate and soundly based, and certainly so as to the portions of which appellant complains. Here, as in a somewhat similar case recently before this court, "the plaintiff had the burden of proving that the conspiracy in fact did continue * * *" Webster Rosewood Corp. v. Schine Chain Theatres, Inc., 2 Cir., 1959, 263 F.2d 533, 535. The District Court could properly find that the burden was not sustained.

3. The court said that
"Competitive bidding is a fair and reasonable method of resolving conflicting demands of competing exhibitors for a license to exhibit a particular picture or pictures on the same run."
The court further defined competitive bidding as a process by which
"a distributor advises each exhibitor of the picture for which offers are solicited. Each exhibitor independently decides the amount which it is willing to offer for the right to exhibit the particular picture and submits an offer to the distributor. The competing offers are evaluated by the distributor and the license to exhibit the picture is awarded to the exhibitor whose offer is believed to present the most satisfactory licensing opportunity."

## II.

■ Appellant also contends that the court below was in error in holding on the facts before it that the allowance of competitive bidding by the distributor-defendants was sufficient to terminate any conspiracy that may have existed. Appellant points to United States v. Paramount Pictures, Inc., 1948, 334 U.S. 131, 164, 68 S.Ct. 915, 92 L.Ed. 1260, in which a system of competitive bidding originally ordered by the three-judge District Court in its decree was reversed by the Supreme Court in favor of divestiture.

Such a contention has been raised in other cases and has been rejected. As the Seventh Circuit has indicated: "[T]he reasons assigned by the Supreme Court for rejecting the elaborate system of competitive bidding, applicable to a nation-wide industry, * * * [bear] little relation to a situation where all competing exhibitors are in the same restricted locality." Loew's, Inc. v. Milwaukee Towne Corp., 7 Cir., 1952, 201 F.2d 19, 24, certiorari denied, 1953, 345 U.S. 951, 73 S.Ct. 865, 97 L.Ed. 1374. We recognize that the system of competitive bidding has serious drawbacks for competing exhibitors. It places a premium on experience, judgment, and financial resources. Costs for all competitors tend to rise, and in the end all may suffer. See Cassady, Impact of the Paramount Decision on Motion Picture Distribution and Price Making, 31 So.Calif. L.Rev. 150, 161–64 (1958). The so-called "split" system, whereby exhibitors divide the list of available pictures and then approach the distributors separately on that basis, enables them to purchase films at lower prices. Whatever the legality of this system—and we are not called upon to deal with that issue here— it probably tends to keep more exhibitors in business than would be the case if competitive bidding were the universal rule. See id. at 164–65.

■ Plaintiff-appellant apparently rejects both these systems—the split and the competitive bid. What it would have in their stead is far from clear. Its primary object in this suit, of course, is to collect damages from the defendants, blaming on them the collapse of its theatrical enterprise in Peekskill.[4] This it cannot do unless it shows a violation of law, and a causal connection between the violation and its losses. Clearly, the appellant cannot be heard to condemn a system of competitive bidding as a *per se* violation of law. Appellant is only entitled to be placed in the same competitive situation as its competitors. Yet, if its reasoning were carried to its logical conclusion, the courts would be required to place it in a preferred or privileged position, superior to that of its competitors. This we cannot do. See Milwaukee Towne Corp. v. Loew's, Inc., 7 Cir., 1951, 190 F.2d 561, 571, certiorari denied, 1952, 342 U.S. 909, 72 S.Ct. 762, 96 L.Ed. 1339; Bigelow v. RKO Radio Pictures, Inc., 7 Cir., 1947, 162 F.2d 520, 524, certiorari denied 1947, 332 U.S. 817, 68 S.Ct. 158, 92 L.Ed. 394. A system of competitive bidding is clearly valid if the films are sold at a fair and reasonable rental. So long as each theatre may bid for the films in an atmosphere of free and open competition, that is all that is required. See Bigelow v. Loew's, Inc., 7 Cir., 1952, 201 F.2d 25, 28, certiorari denied, 1953, 345 U.S. 950, 73 S.Ct. 865, 97 L.Ed. 1373; Milwaukee Towne Corp. v. Loew's, Inc., D.C.N.D.Ill.1956, 139 F. Supp. 809, 812. Here, the court found that the competitive bidding "was truly competitive and neither exhibitor knew the offers made by the other exhibitor."

4. The trial court's finding of a conspiracy in the initial period before September 30, 1950, appears to have been largely based on evidence that defendants followed like policies with respect to appellant, i. e., each distributor was unwilling to negotiate for a particular film unless and until notified that the Paramount Theatre did not wish to show it. No cross-appeal was taken from the judgment, and appellees do not contest this finding in this court. With respect to the defendant AB–PT, there is little or no evidence that it sought to drive appellant out of business; rather, it appears to have been interested in maintaining its own theatre as the leading one in the community.

As we cannot say that this finding by the court was clearly erroneous, the system of competitive bidding in the present case must be upheld. See Rushing v. Metro-Goldwyn-Mayer Distributing Corp., 5 Cir., 1954, 214 F.2d 542, 544.

## III.

Finally, appellant complains that its failure to make a demand to the distributors should not be considered fatal to its claim. It presents two reasons for this position: (1) the making of demands would not have had any effect, and (2) the policy of the distributor-defendants was to license "a good picture to the Peekskill only if and when they were unable to get the picture played at the Paramount Theatre." The record contains no adequate evidentiary basis for these contentions, though the record does indicate that the Paramount Theatre had larger daily gross earnings than appellant's Peekskill, and hence that a top-grade picture (normally rented on a basis which includes a percentage of gross earnings) would produce more for the distributor if placed in the Paramount rather than in the Peekskill. Certainly, if a distributor is to be forced to give up a monetary advantage of that sort, he must be confronted with a clear demand—presumably accompanied by an offer of competitive bidding. Perhaps on occasion circumstances may excuse the lack of demand. Cf. Congress Building Corp. v. Loew's, Inc., 7 Cir., 1957, 246 F.2d 587, 596, 597. But such is not the case here. As we have previously held, and recently reiterated: "[P]laintiffs cannot recover damages on account of any failure to obtain feature pictures for first-run exhibition unless they made demand for that of which they now claim they were deprived by the conspiracy." J. J. Theatres, Inc. v. Twentieth Century-Fox Film Corp., 2 Cir., 1954, 212 F.2d 840, 845, quoted and followed in Webster Rosewood Corp. v. Schine Chain Theatres, Inc., 2 Cir., 1959, 263 F.2d 533, 536; accord, Milwaukee Towne Corp. v. Loew's, Inc., 7 Cir., 1951, 190 F.2d 561, 568, certiorari denied, 1952, 342 U.S. 909, 72 S.Ct. 303, 96 L.Ed. 680.

For these reasons, the judgment below must be

Affirmed.