**Stuart A. KINZLER, on behalf of himself and all others similarly situated, Plaintiff,**

v.

**NEW YORK STOCK EXCHANGE et al., Defendants.**

**No. 70 Civ. 5186.**

United States District Court, S. D. New York.

Jan. 24, 1974.

See also D.C., 53 F.R.D. 75.

Milberg & Weiss, New York City; David J. Bershad, New York City, of counsel, Harold E. Kohn, P. A., Philadelphia, Pa.; Aaron M. Fine, Philadelphia, Pa., of counsel, for plaintiff.

Milbank, Tweed, Hadley & McCloy, New York City; Isaac Shapiro, and Mark L. Davidson, New York City, of counsel, for defendant New York Stock Exchange.

Brown, Wood, Fuller, Caldwell & Ivey, New York City; Richard Conway Casey and James K. Manning, New York City, of counsel, for defendant, Merrill Lynch, Pierce, Fenner & Smith, Inc.

GURFEIN, District Judge:

The plaintiff moves for an order pursuant to Fed.R.Civ.P. 23 determining that this action proceed as a class action. The defendants oppose and move to dismiss the second amended complaint on the ground that the plaintiff has no claim for relief, and alternatively, seek summary judgment. In turn, the plaintiff moves for summary judgment.

Counts I and II of the Second Amended and Supplemental Complaint (the "Complaint") allege violations of Sections 1 and 2 of the Sherman Act, 15 U. S.C. §§ 1 and 2, arising out of a freeze on transfer of registered representatives of Goodbody & Co. ("Goodbody"), imposed by the New York Stock Exchange, Inc. (the "Exchange") with the acquiescence of Goodbody and of Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch"), another defendant, for the purpose of monopolizing Goodbody's business for Merrill Lynch, which prevented plaintiff and the class from freely pursuing their livelihoods in the brokerage business. Count III alleges violation of common law based on the same facts. Jurisdiction is invoked under 15 U.S.C. § 26 for equitable relief and 15 U.S.C. § 15 to recover treble damages. Diversity of citizenship is alleged for the common law claim. 28 U.S.C. § 1332. Claim is also made under the 13th Amendment, 18 U.S.C. § 1581 and 42 U.S.C. § 1994.

Equitable relief has become moot as will appear. Federal jurisdiction is, otherwise, properly invoked as alleged. The defendants' opposition to the class motion and for summary judgment has a common thrust. It is that the individual plaintiff has no claim for relief. Hence, it is argued, he fails to qualify as a representative of a class who could fairly and adequately represent the class, and the individual action should be dismissed or summary judgment awarded.

The plaintiff, on the other hand, maintains that he has stated a claim for relief, and that, in any event, he need not demonstrate that he will, himself, succeed on the merits in order to qualify as a representative of a class so long as he has a sufficient nexus to the class.

As a second line of defense, the Exchange and Merrill Lynch contend that the members in the class are too few, in any event, to satisfy the numerousness requirement of Rule 23 and that common questions of law and fact do not predominate.

The attack on plaintiff's individual claim is twofold. First, that he was not, in fact, injured by the freeze and, hence, cannot recover; and second, that the antitrust violations alleged come under the "rule of reason," and, as a matter of law, are not actionable.

The general background is not in serious dispute. On October 19, 1970, the Exchange instituted a temporary delay in the processing of applications by member organizations who wished to employ registered representatives then employed by Goodbody. The temporary delay (the "freeze") was terminated on December 11, 1970, and was not reinstated thereafter. The freeze was in effect during a period when the Exchange was negotiating with several firms, including Merrill Lynch, to take over the business of Goodbody, which was in failing financial circumstances.

As an inducement to Merrill Lynch or other houses to acquire Goodbody, the Exchange froze the employment of all the Goodbody representatives, and ordered its members not to employ, or to apply to the Exchange for a transfer of employment of, such representatives. The acquisition of Goodbody by Merrill Lynch was consummated on December 11, 1970, and the freeze was lifted simultaneously.

No hearing was afforded to registered representatives of Goodbody who might have desired to protest the freeze. And, of course, no charges were brought against the Goodbody representatives, for they had not been accused of misconduct.

On this general set of facts, the plaintiff seems to argue that the freeze constituted a group boycott for the benefit of Merrill Lynch which is a violation of the Sherman Act *per se*; that even if the regulatory powers given to the Exchange under the Securities Exchange Act of 1934 to some extent immunize the Exchange and its members from the rigorous application of the *per se* doctrine, under Silver v. New York Stock Exchange, 373 U.S. 341, 83 S.Ct. 1246, 10 L.Ed.2d 389 (1963), that case, nevertheless teaches that a failure to afford a hearing and due process to the victim of concerted action by the Exchange and its members gives rise to a claim for relief.

The defendant Exchange responds that it is protected from the application of antitrust doctrine because it ordered the freeze to preserve Goodbody as a viable concern for the benefit of investors, and that a general exodus of Goodbody's registered representatives during the pendency of the Merrill Lynch negotiations would also have put a severe strain on the back-office work, not only of Goodbody, but of the whole securities industry.

Finally, the Exchange argues that there is no standing on the part of the plaintiff or the purported class to sue for the alleged antitrust violation, for the registered representatives were not, in fact, harmed by the freeze, and it is not enough for standing merely to show that there has been an antitrust violation in the abstract.

A previous motion for a class determination had earlier been made before Judge Bonsal who denied it without prejudice. Kinzler v. New York Stock Exchange, 53 F.R.D. 75 (S.D.N.Y.1971). Judge Bonsal refused to make a class determination because he was not satisfied that the class was numerous enough to warrant class action treatment. But he did define the class "as consisting of those Goodbody registered representatives who lost customers to other brokerage firms as a result of Goodbody's precarious financial condition and were unable to follow these customers out of Goodbody because of the alleged freeze." 53 F.R.D. at 77.

When the class determination motion was before Judge Bonsal, the Exchange estimated that the proper class could not exceed twenty-eight in number (53 F.R. D. at 77).*

Since Judge Bonsal's decision, it has been determined by discovery that 200 Goodbody registered representatives left that firm from September, 1970 to December, 1970, although there is no precise figure of how many left during the actual freeze from October 19, 1970 to December 11, 1970 when they were restricted from other employment. It appears further that another 394 Goodbody representatives were no longer with Merrill Lynch by April, 1971.

---

\* That consisted of sixteen registered representatives from whom applications for transfer were filed during the freeze. There was also some correspondence concerning the freeze apart from formal transfer applications. Seven applications for transfer were received on the day after the freeze ended, and five individuals made inquiries about transfer informally.

If the class consists of all those who were pushed out of Merrill Lynch, the class is certainly numerous enough for Rule 23 purposes. But merely losing one's job is not enough; to be a member of the class one must have lost customers *as a result of the freeze*. It is possible that the class is numerous enough.

The question remains whether the class can be determined now.

## I

Loss of employment may be an injury to business or property within the meaning of Section 4 of the Clayton Act. See Vines v. General Outdoor Advertising Company, 171 F.2d 487 (2 Cir. 1948); Dailey v. Quality School Plan, Inc., 380 F.2d 484 (5 Cir. 1967). Loss of accounts would be a case *a fortiori*.

The fact patterns in a situation like this must vary greatly, however. So much would depend upon the confidence of the customer in his individual registered representative. Proof would also involve the length of their association, whether the customer also traded with other registered representatives, and the circumstances under which he went to another brokerage house. Cf. National Auto Brokers Corp. v. General Motors Corp., 60 F.R.D. 476, 489–491 (S.D.N.Y. 1973). That such evidence would have to be developed on an individual basis is clear.

It seems to me also that the common questions of law would not prevail over the individual questions. That is because in an antitrust case of this nature, a group boycott allegedly against many persons, there is no definition of status alone that can satisfy the requirement of standing. The 1966 Note of the Advisory Committee in amended Rule 23(b)(3) commented that "[p]rivate damage claims by numerous individuals arising out of concerted antitrust violations may or may not involve predominating common questions." (3B Moore's Federal Practice ¶ 23.01 [10.–3] at 23–30 (1969)). District Courts have struggled with the problem since the 1966 amendment. Problems of predominance of common questions under Rule 23(b)(3) have arisen in price-fixing cases, see, e. g., City of Philadelphia v. American Oil Co., 53 F.R.D. 45 (D.N.J. 1971) and City and County of Denver v. American Oil Co., 53 F.R.D. 620 (D. Colo.1971); in tie-in cases, see, e. g., Abercrombie v. Lum's Inc., 345 F.Supp. 387 (S.D.Fla.1972), and Siegel v. Chicken Delight, 271 F.Supp. 722 (N.D.Cal. 1967), modified sub nom., Chicken Delight, Inc. v. Harris, 412 F.2d 830 (9 Cir. 1969), and see Lah v. Shell Oil Co., 50 F.R.D. 198 (S.D.Ohio 1970); and in group boycott cases, see, e. g., Jacobi v. Bache & Co., Inc., CCH Trade Cases [1972] ¶ 73,980 (S.D.N.Y.1972); Shumate & Co. v. National Association of Securities Dealers, Inc., CCH [1973–1] Trade Cases ¶ 74,512 (N.D.Texas 1973).

While it may be an exercise in futility to try to reconcile all the class determinations under Rule 23(b)(3) in antitrust cases, one may generalize at least to the extent that Judge Winner did in *City and County of Denver, supra,* when he said:

"If the issues as to liability differ from proposed class member to proposed class member, there should be no class, because, then, the predominance of common factual and legal issues test is not met." 53 F.R.D. at 629.

In the case at bar, proof of an antitrust conspiracy would not permit a plaintiff to establish liability without proof that the conspiracy harmed him. See, e. g., Royster Drive-In Theatres, Inc. v. American Broadcasting-Paramount Theatres, Inc., 268 F.2d 246 (2 Cir.), cert. denied, 361 U.S. 885, 80 S.Ct. 156, 4 L.Ed.2d 121 (1959); Momand v. Universal Film Exchanges, Inc., 172 F. 2d 37 (1 Cir. 1948), cert. denied, 336 U. S. 967, 69 S.Ct. 939, 93 L.Ed. 1118, reh. denied, 337 U.S. 961, 69 S.Ct. 1529, 93 L.Ed. 1760 (1949); cf. Bigelow v. RKO Radio Pictures, 327 U.S. 251, 264, 66 S.

Ct. 574, 90 L.Ed. 652 (1946) and cf. Caceres v. International Air Transport Association, 46 F.R.D. 89 (S.D.N.Y. 1969), app. diss'd, 422 F.2d 141 (2 Cir. 1970). The damage claimed must have arisen from an antitrust violation, not from some other cause. GAF Corporation v. Circle Floor Co., Inc., 463 F.2d 752 (2 Cir. 1972), and see cases discussed in International Railways of Central America v. United Brands Co., 358 F.Supp. 1363, 1370–1373 (S.D.N.Y. 1973).

■ Here it cannot be doubted that the registered representatives who were affected by the freeze were in the "target area" of the alleged conspiracy in the *Billy Baxter* sense (Billy Baxter, Inc. v. Coca-Cola Company, 431 F.2d 183 (2 Cir. 1970), cert. denied, 401 U.S. 923, 91 S.Ct. 877, 27 L.Ed.2d 826 (1971)), but the plaintiff must also prove his own "causative link to his injury." 431 F.2d at 187 (per Anderson, J.). Indeed, though a person may be in the target area, unless he is himself injured, he would not be a proper member of the class.

It seems to me that, in cases of this kind, there is a fundamental difference between the harm that creates liability, and the extent of that harm which creates damages. In many cases, a separate trial on the issue of liability does not involve the issue of damages, for the harm to the plaintiff is postulated, and the issue is solely one of legal responsibility. That may even be true in certain types of price-fixing conspiracies, aside from the "passing on" problem of Hanover Shoe, Inc. v. United Shoe Machinery Corp., 392 U.S. 481, 88 S.Ct. 2224, 20 L. Ed.2d 1231 (1968), where "issues of impact of the conspiracy and damages become one and the same." City of Philadelphia v. American Oil Co., *supra,* 53 F.R.D. at 67. See 3B Moore, *supra,* ¶ 23.45 [2] at 23–758. Yet, just as proximate causation is an element in *liability* for tort, so the "causative link" of

Judge Anderson is an element of *liability* under Section 4 of the Clayton Act.

If, then, we are faced with a potential class whose adherents must have been harmed individually by the forbidden act, we must reckon with the taking of proof to establish the separate claims. If all or most potential class members participate in the trial, perhaps accommodation could be had, for the bulk of the proof would be the common evidence of the alleged antitrust conspiracy. But if many or most of the designated class simply do not show up for trial, could a court reasonably sign a judgment binding them when it would be in the dark on the issue of their individual harm—the "causative link"? I think not.

The number of registered representatives who could be potential plaintiffs because of the freeze is, on the other hand, not so numerous as to preclude the joinder of separate actions. No eager co-plaintiffs have come to the surface. If my analysis is right, in a class action, their separate proof would, in any event, have to be adduced to confirm their proper membership in the class. If my analysis is faulty, there would at least be an equal facility of proof in a consolidated action as in a class action. That is particularly true since the enactment of 28 U.S.C. § 1407 and the creation of the Judicial Panel for Multidistrict Litigation.

■ I find, therefore, that the proposed class is numerous enough under Rule 23(a)(1) but that questions of law and fact common to the members of the class do not predominate over any questions affecting only individual members, and that a class action is not superior to other available methods for the fair and efficient adjudication of the controversy. Fed.R.Civ.P. 23(b)(3).

II

■■ With respect to the contention that the complaint should be dismissed

for failure to state a claim for relief because of Silver v. New York Stock Exchange, *supra,* I think that an opportunity must be given to develop the facts. Summary judgment is not favored in an antitrust case. See Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 473, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962); Fortner Enterprises, Inc. v. United States Steel Co., 394 U.S. 495, 500, 89 S.Ct. 1252, 22 L.Ed.2d 495 (1969). And here we must deal with the holding of the Supreme Court in *Silver, supra,* that what might otherwise be *per se* violations of the Sherman Act may be excused by the self-regulatory requirements of the Securities Exchange Act. The Exchange urges strongly that it had to invoke a freeze in order to discharge its primary duty, the protection of investors. That may well turn out to be the fact, but the plaintiff raises the possibility that the intent was to favor Merrill Lynch through a concert of action tantamount to a conspiracy. The plaintiff, individually, raises issues of fact on whether his customers withdrew their securities from Goodbody in October and November, 1970, and whether he could have obtained a job at Kidder, Peabody, but for the freeze. The defendants, therefore, may not be awarded summary judgment.

■ On the other hand, the plaintiff cannot get summary judgment. The failure to afford a hearing was, it is true, the decisive factor, in *Silver, supra,* but that case involved disciplinary action, or something similar, which evoked the requirements of procedural due process. Even if in a proper discipline case, the failure to give a hearing could support summary judgment under *Silver,* which I need not decide, that is not the case here.

Accordingly, the motion for a class determination is again denied. The defendants' motions to dismiss the complaint and for summary judgment are denied, as is the plaintiff's motion for summary judgment.

### CERTIFICATION UNDER SECTION 1292(b)

I have had so much difficulty with analyzing the issue of individual right to recovery, as distinguished from the question of damages, in this particular type of antitrust case (see Antitrust Violations—Class Action, 6 A.L.R.Fed. 19, *passim*) that I am certifying an appeal under 28 U.S.C. § 1292(b).

It may be somewhat presumptuous for a District Judge to do so, but I suggest most respectfully that to limit interlocutory appeal uniformly, save in "death knell" cases, cf. Eisen v. Carlisle & Jacquelin, 370 F.2d 119 (2 Cir. 1966), where a class action determination is denied, may, as a practical matter, frustrate the efficacy of an appeal on final judgment. Since the Court of Appeals has the last say on whether to entertain the appeal, in any event, I think the District Court should be encouraged, only, of course, when it makes a class action order, *dubitante,* to certify an appeal from the interlocutory order under § 1292(b).

■ I am of the opinion that the foregoing order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation.

This shall be an order under 28 U.S.C. § 1292(b).