**Louis E. DAILEY, Jr., Plaintiff-Appellant,**

v.

**The QUALITY SCHOOL PLAN, INC. and Cowles Magazine and Broadcasting, Inc., Defendant-Appellee.**

**No. 28185.**

United States Court of Appeals, Fifth Circuit.

June 1, 1970.

C. Douglass Forde, Jr., John P. Koons, Dallas, Tex., for plaintiff-appellant.

Albert H. Ebert, Jr., James A. Baker, III, Houston, Tex., Morris Harrell, Stan McMurry, Dallas, Tex., for Quality School Plan, Inc.

Neth L. Leachman, Henry D. Akin, Sr., Dallas, Tex., for Cowles Magazine & Broadcasting, Inc.

Before WISDOM, AINSWORTH, and CLARK, Circuit Judges.

PER CURIAM.

We affirm.

In 1965 Louis E. Dailey filed this antitrust action against Quality School Plan, Inc. and Cowles Magazine and Broadcasting, Inc. For ten years Dailey had been employed by Educational Readers Service, Inc. (ERSI), a company Cowles owned. ERSI's business was based on

offering to schools a package of magazines which, for a commission, were sold through the students to the public. At ERSI Dailey worked up to the position of supervisor; he had seventeen salesmen in six states under his supervision. In February 1965 Quality acquired ERSI from Cowles. Five months later Dailey and Quality parted company.

In his complaint Dailey alleged that he lost his position with ERSI as a result of Quality and Cowles having combined and conspired to restrain commerce in violation of Section 1 of the Sherman Act. He alleged also that Quality's acquisition of ERSI created a monopoly in the school plan magazine market in violation of Section 7 of the Clayton Act. The district court dismissed the suit for failure of the complaint to state a claim within its jurisdiction or upon which relief could be granted against either Quality or Cowles.

On appeal this Court held that because of the liberal test favoring sufficiency of a complaint to state a claim,[1] Dailey's complaint did "state a barebones claim against Quality and Cowles". The Court held that a claim was not stated against Cowles under Section 7 of the Clayton Act. Accordingly, the Court reversed and remanded the case to allow Dailey his day in court to prove his claim. 380 F.2d 484 (1967).

The plaintiff had his day in court. The jury found for the defendants. The 900 pages of testimony and 200 exhibits in the heavily burdened district court and the meritless appeal to this overburdened Court suggest that there are two sides to the question whether a reviewing court should lean over backwards to sustain the sufficiency of a complaint previously held by the district court to have been insufficient to state a claim upon which relief may be granted.

### I.

The district judge charged the jury on nine special issues. With commendable candor, counsel for Dailey in his brief on appeal concedes that he "limits his appeal to the rendition of judgment against him on the basis of Jury's answer to Special Issue Number 3". This issue, with the jury's answer, is as follows:

SPECIAL ISSUE NO. 3:

"Do you find from a preponderance of the evidence that the effect of the acquisition by Quality of the assets of ERSI under their purchase agreement dated February 1, 1965 was either to substantially lessen competition or to tend to create a monopoly in the school plan business and in the relevant *geographic* market you have found; and that Plaintiff Dailey was *injured* in his *business or property as a direct and proximate* result thereof? (Emphasis supplied.)

Answer: _____No_____

" 'Yes' or 'No' "

Counsel for the appellant belatedly challenges, as a matter of law, the submission of this issue to the jury. At the trial he made no objection to the submission of the charge to the jury. He made no motion for a directed verdict and no motion for a judgment notwithstanding the verdict. He made no motion for a new trial. We echo Judge Learned Hand:

[B]ut to this it is a complete answer that he did not ask the Judge so to direct the jury; and it it the well-settled rule, which we have repeatedly applied, that, if a party does not ask a judge to withdraw an issue, the verdict is conclusive, save for a motion for a new trial.

Ring v. Authors' League of America, 2 Cir. 1950, 186 F.2d 637, 641. See Thomas

---

1. See Conley v. Gibson, 1957, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 and Radovich v. National Football League, 1957, 352 U.S. 445, 77 S.Ct. 390, 1 L.Ed.2d 456 for the test as to the sufficiency of a complaint to state a claim.

v. Akin Equipment, 5 Cir. 1962, 309 F.2d 331; Stokes v. Continental Assurance Company, 5 Cir. 1957, 242 F.2d 893.

██ Thus, at the proper time to correct errors in a charge, if there are errors, counsel for the plaintiff did not object to the substance or to the form of Special Issue Number 3. Assuming, therefore, the correctness of the charge, the jury decided, either or both, that:

(1) the effect of Quality's acquisition of ERSI was not to lessen competition or to tend to create a monopoly; or (2) Dailey was not injured in his business or property as a direct and proximate result of the acquisition.

A study of the record shows that there was sufficient evidence for this two-fold issue to be submitted to the jury. For example, there is evidence that Dailey was not fired or forced to resign, but resigned because of a dispute over his competition. Quality produced evidence to show that, notwithstanding this dispute, Dailey would have received from Quality virtually the same compensation he received from ERSI, $16,402 as against $16,428.

## II.

██ Dailey contends that the trial judge erred in excluding evidence relating to the termination of employment of five former ERSI supervisors after August 14, 1965, the date that he left Quality. Whether post-acquisition evidence is admissible depends on the nature of the evidence. See Federal Trade Commission v. Procter and Gamble, 1967, 386 U.S. 568, 87 S.Ct. 1224, 18 L.Ed.2d 303. The district judge was well aware of this and, indeed, admitted certain post-acquisition evidence. We note, as undoubtedly the district judge noted, that one of the exhibits Dailey sought to introduce showed on its face that four of the five supervisors who he contends "were terminated" after August 14, 1965, resigned voluntarily and three of these four went to work for Curtiss Publishing Company, one of Quality's competitors. The fifth supervisor testified to his termination in person at the trial.

██ In the circumstances of this case, we hold that the court did not err in excluding the post-acquisition evidence relating to the supervisory employees.

## III.

As to Cowles, the trial court properly submitted the case to the jury only under the Sherman Act. The jury decided in favor of the defendant. That ended it as to Cowles, for Dailey admits that his appeal is limited to his claim under the Clayton Act and this Court, in the prior adjudication, held that Cowles was not liable under the Clayton Act.

The judgment is affirmed.