**William Paul FREEMAN, Plaintiff,**

v.

**EASTMAN–WHIPSTOCK, INC., et al.,
Defendants.**

**Civ. A. No. 74–H–271.**

United States District Court,
S. D. Texas,
Houston Division.

Feb. 25, 1975.

J. Raymond Needham, Needham & O'Rourke, Houston, Tex., for plaintiff.

Richard R. Brann and James C. Plummer, Baker & Botts, Houston, Tex., for Eastman-Whipstock and Wilson.

David Bland, Barrow, Bland & Rehmet Houston, Tex., for Sperry-Sun.

## MEMORANDUM AND OPINION

CARL O. BUE, Jr., District Judge.

Plaintiff alleges wrongful discharge from employment in violation of the antitrust laws by two of his former employers and a former supervisor. The corporate defendants, Sperry-Sun, Inc. (Sperry-Sun), and Eastman-Whipstock,

Inc. (Eastman-Whipstock), have moved for summary judgment, contending that plaintiff lacks standing to sue and, alternatively, that plaintiff's complaint fails to state a claim.

Federal courts have rarely been confronted with the legal questions here presented under the aegis of the antitrust laws, and this Court has found only one case in this Circuit which is analogous. *See* Dailey v. Quality School Plan, Inc., 380 F.2d 484 (5th Cir. 1967), appeal on remand, 427 F.2d 1080 (5th Cir. 1970). The Court has therefore carefully considered the extensive information made available through discovery and congruent recitation of facts by counsel as well as representations by plaintiff's counsel. While several facts concerning the reasons for plaintiff's termination are in dispute at this stage, sufficient undisputed facts have been developed to cause the Court to conclude: (1) that plaintiff does have standing in this case; and (2) that plaintiff's complaint, as refined in his response to defendants' motions for summary judgment, fails to state a claim upon which relief could be granted. The development of facts about the employment discharge beyond the bare pleadings dictates that failure to state a claim requires granting summary judgment as to all defendants, pursuant to Rule 12(c), Fed.R.Civ.P. Summary judgment is so granted, and this cause is dismissed.

### FACTS [1]

Plaintiff is a well surveying geologist, skilled in utilizing gyroscopic and magnetic techniques to survey well bottoms. Upon graduation from college in 1964, plaintiff was employed by defendant Sperry-Sun. Plaintiff thereafter was employed by the predecessor corporation of defendant Eastman-Whipstock.

The precise evaluation of plaintiff's work performance with Sperry-Sun and Eastman-Whipstock is disputed and difficult to ascertain from available information. However, six facts seem to be clearly established: (1) plaintiff's employment with Sperry-Sun was terminated by Sperry-Sun on November 6, 1970; [2] (2) plaintiff was immediately under the supervision of defendant John Wilson at Sperry-Sun, and Wilson was at least partly responsible for the decision to terminate plaintiff's employment with Sperry-Sun; (3) plaintiff was subsequently employed on March 24, 1971, by the predecessor corporation of defendant Eastman-Whipstock as a Directional Gyro Supervisor; (4) defendant John Wilson was subsequently employed as a supervisor by the predecessor corporation of defendant Eastman-Whipstock during February, 1972; (5) plaintiff's employment with Eastman-Whipstock was eventually terminated on June 11, 1973; and (6) after this termination, plaintiff and some associates attempted to form their own company and enter the well surveying business ("The Parsons Venture"), but failed.

### NATURE OF PLAINTIFF'S CLAIM

This suit is fundamentally an employment personnel dispute. A discharged employee alleges that two of his former employers forced him out of the well surveying industry and deprived him of the opportunity to use his expertise in his chosen profession. *See* Plaintiff's Complaint at 5, ¶ 15 (February 25, 1974). This dual termination allegedly violates the antitrust laws because the

---

1. The following factual background has been gleaned from the pleadings and information extrapolated from the depositions and answers to interrogatories. While some of the stated facts are in dispute, as noted above, the primary facts are not, and will be highlighted where appropriate. All statements of fact are viewed and recited in a manner most favorable to plaintiff, as the party opposing the motions for summary judgment.

2. Plaintiff has previously attempted to take legal action against defendant Sperry-Sun for alleged damages suffered by plaintiff as the result of this termination. *See* Plaintiff's Complaint at 3, ¶ 9 (February 25, 1974). This claim was settled on March 5, 1971. *Id. See* note 4, *infra.*

actions of the corporate defendants allegedly constitutes proscribed "joint" action, aided as it was by the acts of an alleged "common agent," defendant Wilson. *See* Radovich v. National Football League, 352 U.S. 445, 77 S.Ct. 390, 1 L. Ed.2d 456 (1957).[3] The substance of the claimed antitrust violation is allegedly reinforced by the dominant positions of the corporate defendants in the gyroscopic well surveying industry. Effectively, according to plaintiff, his unemployed and unemployable status in the industry translates into an exercise of monopoly power by the defendants in violation of the Sherman Act.

To illustrate his inability to practice his profession, plaintiff points to his subsequent failure in the Parsons Venture. This venture was organized by independent well surveyors to establish a well surveying company, and plaintiff was at least tangentially related to the company. The venturers formulated a bid on a certain government contract. The venture failed, according to plaintiff, *see* Plaintiff's Complaint at 5, ¶ 14 (February 25, 1974), because one of the corporate defendants refused to sell to the entrepreneurs certain machinery and equipment which were vital to fulfilling the contract requirements. As a result of their refusal, plaintiff's attempt to re-enter the industry proved abortive. To plaintiff, such a refusal amply demonstrates the illicit monopoly power of both of the corporate defendants and their ability to restrain trade unreasonably.

## CLARIFICATION OF PLAINTIFF'S COMPLAINT

Understanding the thrust of plaintiff's illustration regarding the Parsons Venture originally proved troublesome to defendants and to this Court. Both the defendants and the Court originally perceived plaintiff's complaint to allege antitrust violations on the basis of a "re-fusal to deal" in connection with the Parsons Venture. Indeed, defendants' motions for summary judgment centered on this interpretation of the complaint. *See* Brief in Support of the Motion for Summary Judgment of Defendant Sperry-Sun Well Surveying Company (November 18, 1974); Brief in Support of the Motion for Summary Judgment of Defendant Eastman-Whipstock, Inc. (December 9, 1974).

These misperceptions were clarified by plaintiff in his response to the motions for summary judgment. *See* Plaintiff's Brief in Opposition to the Motions for Summary Judgment at 1–2 (December 16, 1974). Plaintiff stated that he was strictly complaining about the termination of his employment by each of the corporate defendants. Plaintiff explained that he was thus sounding a claim for damages for alleged violation of the antitrust laws for "blackballing of an employee", not "refusal to deal". Again plaintiff explicated his basic allegation: he has been "blackballed" by the corporate defendants in a joint action and, because of their dominance in the industry, the defendants effectively have prevented plaintiff from ever practicing his profession again. Radovich v. National Football League, *supra*. The Parsons Venture was utilized, according to plaintiff, merely to illustrate the difficulties confronting any former employee of these two industry "giants" who seeks to pursue his profession with another company in the industry.

Although the corporate defendants have submitted separate briefs on the legal issues thus raised, the foundations of their legal positions are similarly constructed and are discussed together. They raise two substantial points: (1) that plaintiff lacks standing under the antitrust laws to prosecute any claim as the result of the termination of his employment; and (2) that

---

**3.** In *Radovich*, a former professional football player sued the National Football League for allegedly enforcing a league policy to prevent his being hired by any franchise club. *See* notes 6 and 7, *infra*, and accompanying text.

plaintiff's complaint fails to state a claim upon which relief can be granted.[4]

## STANDING

■■ The threshold requirement of standing is statutory in antitrust cases.[5] An antitrust plaintiff has standing if he can demonstrate injury to his business or property. Courts have imposed the additional burden that an antitrust plaintiff must demonstrate that he was "directly injured", or in the "target area" of the effect reasonably foreseeable from the alleged illegal conduct. *See* In Re Multidistrict Vehicle Air Pollution M.D.L.No. 31, 481 F.2d 122, 126–28 (9th Cir. 1973). The gist of this requirement is that a private antitrust plaintiff does not have the right to complain of the mere existence of a violation. Gray v. Shell Oil Co., 469 F.2d 742 (9th Cir. 1972), cert. denied, 412 U. S. 943, 93 S.Ct. 2773, 37 L.Ed.2d 403 (1973).

Employees *qua* employees have been granted standing in antitrust cases in some instances. *See* Dailey v. Quality School Plan, Inc., 380 F.2d 484 (5th Cir. 1967); Nichols v. Spencer International Press, Inc., 371 F.2d 332 (7th Cir. 1967); Roseland v. Phister Mfg. Co., 125 F.2d 417 (7th Cir. 1942); Kinzler v. New York Stock Exchange, 62 F.R.D. 196 (S.D.N.Y.1974). Salary or commissions lost as a result of an antitrust violation have been held recoverable as damages under 15 U.S.C. § 15. *See, e. g.,* Vandervelde v. Put & Call Brokers & Dealers Assoc., 344 F.Supp. 118 (S.D.N.Y.1972). However, courts have construed the antitrust standing requirement restrictively to permit standing only to those employees who have distinct commercial interest or enterprises. *Cf.* Hawaii v. Standard Oil Co., 405 U.S. 251, 264, 92 S.Ct. 885, 31 L.Ed.2d 184.[6]

Plaintiff specifically does not allege an attempt to initiate or maintain a venture or enterprise in the industry. He contends that he is a blackballed employee. Such a distinction is crucial to proper antitrust analysis in this case.

---

4. Sperry-Sun advances the additional argument that plaintiff is estopped from complaining about his first employment termination by virtue of the settlement agreement reached between plaintiff and Sperry-Sun on March 5, 1971.

The settlement "release" is entirely contained in a check payable from Sun Oil Company to plaintiff, in the amount of $19,718.44, and dated March 8, 1971. On the back of the check, the following notation has been typed in and appears directly above plaintiff's signature:

"Endorsement of this check constitutes a release in full of any and all claims against either Sperry-Sun Well Surveying Company of Sun Oil Company or the employeees of Sperry-Sun Well Surveying Company or Sun Oil Company arrising (sic) out of or in anyway relating to the employment or discharge of William Paul Freeman."

*See* Exhibit # 1, Deposition of Plaintiff, June 6, 1974.

The Court concludes that in view of its determination on the substantive legal questions presented in this case, an evaluation of the notation on the check need not be reached, either as to Sperry-Sun or as to John Wilson. The Court does note, however, that enforcing ordinary standards of estoppel may be open to scrutiny where a settling employee suspects possible antitrust violations, otherwise cognizable by a federal court, and justiciable as to that employee. The strong Congressional preference of stimulating the role of individuals to act as private attorneys-general to enhance the enforcement of the antitrust laws may militate against broadly enforcing restrictive settlements. *See* Hawaii v. Standard Oil Company, 405 U.S. 251, 92 S.Ct. 885, 31 L.Ed.2d 184 (1972).

5. "Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States . . . ." 15 U.S.C. § 15.

6. *See* Dailey v. Quality School Plan, Inc., *supra* (commission sales agent terminated from the company had standing where he has developed his own sales territory); Nichols v. Spencer International Press, Inc., *supra* (sales supervisor's loss of employment is injury to business or property within the meaning of Clayton Act, § 4, 15 U.S.C. § 15); Roseland v. Phister Mfg. Co., *supra* (exclusive representative of defendant in business of merchandise broker, salesman and branch manager for defendant had sufficient business or property to have standing to allege antitrust violations).

Plaintiff's clarification of his cause of action removes him from that class of potential antitrust litigants who are trying to enter the industry, *see, e. g.,* North Texas Producers Association v. Young, 308 F.2d 235 (5th Cir. 1962), cert. denied, 372 U.S. 929, 83 S.Ct. 874, 9 L.Ed.2d 733 (1963); *cf.* Martin v. Phillips Petroleum Co., 365 F.2d 629 (5th Cir. 1966), and relocates him among the jobless who are "excluded from employment" by a group boycott allegedly executed against him by businesses within the industry. *See, e. g.,* Radovich v. National Football League, *supra*; Flood v. Kuhn, 407 U.S. 258, 92 S.Ct. 2099, 32 L.Ed.2d 728 (1972); Salerno v. American League of Prof. Baseball Clubs, 429 F.2d 1003 (2d Cir. 1970), cert. denied sub nom. Salerno v. Kuhn, 400 U.S. 1001, 91 S.Ct. 462, 27 L.Ed.2d 452 (1971); Kapp v. National Football League, 390 F.Supp. 73 (N.D. Cal.1974).

The United States Court of Appeals for the Tenth Circuit recognized this distinction and its impact on standing in Reibert v. Atlantic Richfield Co., *supra,* by noting that standing was available to an employee-plaintiff as an employee in a *Radovich*-type case—i. e., a "blackball" case where alleged antitrust violations are directed against the blackballed party. 471 F.2d at 730–731.[7]

Defendants suggest that *Radovich* should be construed narrowly to hold only that the antitrust laws are to be applicable to professional football. The broad language utilized by the Supreme Court in *Radovich* undercuts such a narrow construction. Clearly, the Supreme Court there suggested that antitrust complaints should be liberally construed. *See* 352 U.S. at 453, 77 S.Ct. 390.

This Court agrees with the *Reibert* court's interpretation of *Radovich* to permit a plaintiff to have standing under the antitrust laws to allege and challenge a conspiracy of two or more employers attempting to prevent one's employment in an industry, where those conspirators have the power to enforce their conspiratorial decision.[8] *See* Radovich v. National Football League,

7. Defendants' reliance on Reibert v. Atlantic Richfield is misplaced because the *Reibert* facts are distinguishable from those in the instant case. *Reibert* was an employee who had lost his employment as the result of a merger. He contended that the two corporations had merged illegally, causing injury to himself and other employees of the merged company.

The Tenth Circuit Court of Appeals approved dismissing the cause for lack of standing because it found that any antitrust violation which was being alleged pertained strictly to injuries to competition in the petroleum industry, not to the employee's individual employment. 471 F.2d at 730.

8. Apparently, the United States Court of Appeals for the Fifth Circuit has previously determined that in certain instances the employment or occupation by which a person earns a living can constitute a "business" under 15 U.S.C. § 15. *See* Dailey v. Quality School Plan, Inc., *supra. Cf.* Hoopes v. Union Oil Co., 374 F.2d 480 (9th Cir. 1967). This Court accepts that proposition in adjudicating the instant case, even though *Dailey* involved an employee with a recognized and separable entity in the industry—a sales territory.

The only other cases found by this Court in which a plaintiff-employee had standing under the antitrust laws were cases involving professional athletes. *See, e. g.,* Kapp v. National Football League, *supra*; Blalock v. Ladies Professional Golf Assoc., 359 F.Supp. 1260 (N.D.Ga.1973); Boston Professional Hockey Assoc. v. Cheevers, 348 F.Supp. 261 (D.Mass.1972), remanded on other grounds, 472 F.2d 127 (1st Cir. 1973); Hawkins v. National Basketball Assoc., 288 F.Supp. 614 (E.D.Pa.1968). Those cases involved clearly-defined "group boycotts" against persons of unusual skill whose location in the industry had a measurable effect on competition and on the rights and earning capacities of fellow athletes. *See* Haywood v. National Basketball Assoc., 401 U.S. 1204, 91 S.Ct. 672, 28 L.Ed.2d 206 (Douglas, J., in chambers); *see generally* Comment, The Super Bowl and the Sherman Act: Professional Team Sports and the Antitrust Laws, 81 Harv.L.Rev. 418 (1967).

No facts are presently available to this Court which demonstrate that plaintiff's skill was so extraordinary as to constitute a unique resource the absence of which was liable measurably to affect competition. In view of the ultimate disposition of this case, however, the Court does not deem such an

*supra,* 352 U.S. at 453, 77 S.Ct. 390; *see also* Annotation, Validity Under the Federal Antitrust Laws of Agreements Between Employers or Employer Associations Imposing Restrictions on Employment, 2 A.L.R.Fed. 839 (1969). Based on the present state of the pleadings in this case, such a theory cannot be ruled out.

## FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Plaintiff's clarification of his complaint alleges illicit conduct resulting from the joint action of two of his former employers who are allegedly the dominant forces in the market. A re-examination of plaintiff's complaint reveals that plaintiff only once alleges "joint action" taken by the corporate defendants when each of them decided to discharge plaintiff.

The spectre of "blackballing" is raised at paragraph 17 ("Count One"). Plaintiff there states that he

. . . alleges a violation of 15 U.S.C. § 2 by the Defendants, EASTMAN-WHIPSTOCK, INC., SPERRY-SUN, INC., and JOHN W. WILSON, in that they monopolized and attempted to monopolize, and combined and conspired with one another to monopolize, the trade and commerce among the several states *by planning and ex-*

*ecuting a predatory policy intended to drive Plaintiff FREEMAN from the well-surveying business and to destroy his means of earning a livelihood within that business. (Emphasis added)*

Plaintiff's Complaint at 6, ¶ 17 (February 25, 1974).

The allegation of Paragraph 17, standing alone, could state a claim upon which relief can be granted under the liberal "wholly frivolous" test favoring sufficiency of a complaint to state a claim.[9] Radovich v. National Football League, *supra; cf.* Cordova v. Bache & Co., 321 F.Supp. 600, 606–07 (S.D.N.Y. 1970). Ultimately, however, plaintiff's own statements indicate that his employment terminations are not remediable under the antitrust laws.[10]

The complaint and plaintiff's deposition indicate that decisions regarding plaintiff's tenure with each corporate defendant were unilaterally reached by such defendant and did not involve consultation with the other corporate defendant. Indeed, the available facts in this case indicate that the corporate defendants are coupled only because of their dual employment of defendant John Wilson, and because plaintiff alleged that they both relied upon defendant Wilson's advice in deciding to terminate plaintiff's employment.

---

inquiry to be necessary. The broad language used in cases interpreting *Radovich* at least suggests that such a personal evaluation may be unnecessary. Under the "target area" or "direct injury" approaches, standing exists sufficiently for those against whom illegal anticompetitive conduct is allegedly aimed. *Cf.* Volasco Products Co. v. Lloyd A. Fry Roofing Co., 308 F.2d 383, 395 (6th Cir. 1962) ("Congress has allowed for the private enforcement of the anti-trust laws by an *aggrieved* party and . . . the laws protected the *victims* of the forbidden practices, as well as the public.") (Original emphasis).

9. Concerted actions to boycott were once termed illegal *per se* by the United States Supreme Court. *See* Klor's, Inc. v. Broadway-Hale Stores, Inc., 359 U.S. 207, 79 S.Ct. 705, 3 L.Ed.2d 741 (1959); Fashion Origi-

nators' Guild of America v. F. T. C., 312 U.S. 457, 61 S.Ct. 703, 85 L.Ed. 949 (1941). However, the Court has more recently recognized that a boycott can be justified and should therefore be removed from the *per se* category. Silver v. New York Stock Exchange, 373 U.S. 341, 83 S.Ct. 1246, 10 L.Ed.2d 389 (1963) (Boycott may be removed from the *per se* category by a "justification derived from the policy of another statute or otherwise.") 373 U.S. at 348–49, 83 S.Ct. at 1252.

10. Failure on the merits has resulted once before in this Circuit for an antitrust plaintiff-employee who had previously succeeded in gaining recognition via standing for his "barebones" claim. *See* Dailey v. Quality School Plan, Inc., 380 F.2d 484 (5th Cir. 1967), appeal after remand, 427 F.2d 1080 (5th Cir. 1970).

Under such facts, the Court concludes that plaintiff's complaint falls under the *Cliff Food Stores* doctrine. The U. S. Court of Appeals for the Fifth Circuit there held that corporate actions taken in concert with officers of the corporation itself are insufficient to allege a violation of the antitrust laws. *Cliff Food Stores, Inc. v. Kroger, Inc.*, 417 F.2d 203, 206 (5th Cir. 1969). *Cliff Food Stores* dictates that plaintiff's complaint in this case fails to state a claim upon which relief can be granted because his cause of action centers around two separate actions taken by corporations, each taken in concert with one of its corporate employees.[11]

Thus, plaintiff's refined complaint fails to state a claim upon which relief can be granted. The development of facts beyond the bare pleadings dictates that failure to state a claim requires granting summary judgment as to all defendants, pursuant to Rule 12(c), Fed.R.Civ.P. Summary judgment is therefore granted as to all defendants. This cause is dismissed.

[11]. Plaintiff's failure to state a claim precludes this Court from deciding whether actions of the corporate defendants violated the Sherman Act and whether plaintiff's discharges of employment were "wrongful". These points have not been reached, and nothing in the Court's opinion should be interpreted as reviewing or deciding the merits of these questions.