**SHUMATE & COMPANY, INC., et al., Plaintiffs-Appellants,**

v.

**NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC., et al., Defendants-Appellees.**

**SHUMATE & COMPANY, INC., et al., Plaintiffs-Appellants,**

v.

**AMERICAN STOCK EXCHANGE, et al., Defendants-Appellees.**

Nos. 74–1426, 74–1427.

United States Court of Appeals, Fifth Circuit.

March 5, 1975.

Rehearing Denied March 31, 1975.

B. Thomas McElroy, Dallas, Tex., for plaintiffs-appellants.

Morris Harrell, Lyman G. Hughes, Dallas, Tex., Robert A. Bicks, New York City, for Nat. Ass'n of Securities Dealers.

William E. Jackson, New York City, Fletcher Yarbrough, Dallas, Tex., for N. Y. Stock Exchange.

Briscoe R. Smith, New York City, W. Randolph Elliott, William H. Tinsley, Dallas, Tex., for American Stock Exchange.

Robert. B. Fiske, Jr., Forsythe, McGovern & Pearson, Davis, Polk & Wardwell, New York City, of counsel for defendants-appellees.

Before TUTTLE, RONEY and GEE, Circuit Judges.

RONEY, Circuit Judge:

Gaston A. Shumate and his solely owned company Shumate & Company, Inc. (Shumate) filed two suits alleging violations of the Sherman Act on the part of the National Association of Security Dealers (NASD) and Shearson, Hammill & Company, Inc., in one suit, and the New York Stock Exchange (NYSE), American Stock Exchange (AMEX) and various named individual defendants in the other. Shumate alleged that all the defendants were parties to two conspiracies in restraint of trade: first, a conspiracy to exclude securities listed on the major stock exchanges from the NASD Automated Quotation System (NASDAQ) at its beginning, and second, a conspiracy to ignore such securities after they were included on NASDAQ. The two suits were consolidated for trial, and after plaintiff had rested his case following five days of trial to a jury, the district court directed a verdict against him in favor of all defendants. As to the first alleged conspiracy, the district court found no evidence of damage to plaintiff. As to the second alleged conspiracy, the district court found no evidence of the conspiracy itself, and no evidence of injury from the conspiracy. As a matter of law, injury to a plaintiff's business or property is a necessary element of a private claim for any relief under the antitrust laws. Without sufficient evidence to present a jury question as to such injury, the court entered judgment against Shumate, from which Shumate appeals. We affirm.

## FACTS

Shumate, a member of NASD but not a member of any major stock exchange,

is a broker-dealer in securities, effectuating the purchases and sales for his clients in the over-the-counter market (OTC). The OTC market, unlike a stock exchange, has no central location in which transactions take place. The trades in OTC securities take place between individual brokers, generally over the telephone. Generally, the stocks traded in OTC are not listed on any stock exchange, and as such are referred to in the trade as "unlisted stocks." One segment of the OTC market consists, however, of trades, outside of the exchanges, of stocks which are listed on an exchange. This is commonly called the "third market." It is in reference to this third market in listed securities that Shumate has alleged antitrust violations on the part of the various defendants.

In response to a requirement by a 1964 amendment to the Securities Exchange Act of 1934 that NASD provide rules for dissemination of quotations on securities sold otherwise than on national securities exchanges, NASD employed Arthur D. Little, Inc., in 1967, to examine the feasibility of a nationwide automated quotation system for OTC trading. The next year NASD hired Bunker-Ramo Corp. to construct the system which was named the National Association of Securities Dealers Automated Quotations System (NASDAQ). The full membership of NASD approved an amendment to NASD's by-laws authorizing the Board of Governors, within limitations, to adopt, amend, alter, or supplement the rules governing the NASDAQ system. This amendment of the by-laws was filed with the Securities Exchange Commission, as required by law. After consultation with the SEC, from which NASD concluded that the SEC wanted the third market included in NASDAQ, NASD adopted rules for the system which would make third market quotations for listed stocks eligible for NASDAQ.

During a visit with Gordon Macklin, President of NASD, in August 1970, Ralph Saul, President of the American Stock Exchange (AMEX), expressed his opposition to the plan to include listed stocks on NASDAQ. Macklin told Saul that NASD's NASDAQ Committee felt that listed securities should not be included, but that the SEC wanted them in the system, so they had been included. After Macklin refused Saul's offer to approach the SEC jointly, Saul visited the SEC where he expressed his dissatisfaction to Hamer Budge, Chairman of the SEC. Chairman Budge suggested that Saul place his objections in writing, which was done in a letter to the SEC dated October 9, 1970. Saul's basic concern was the possible adverse impact of such inclusion upon the stock exchanges and the public. Saul did not discuss his letter with anyone connected with NASD or NYSE either before or after writing it.

Robert Haack, President of the New York Stock Exchange (NYSE), also wrote a letter to the SEC in October of 1970, expressing his concern over the possible ramifications of the inclusion of the third market in NASDAQ. While Haack sent a copy of his letter to Macklin, he did not send one to Saul. He had never seen a copy of Saul's letter to Chairman Budge.

A week after Haack sent his letter to the SEC, Macklin visited Chairman Budge to discuss the question of whether or not the SEC would approve a start-up of NASDAQ without the listed stocks. Chairman Budge again requested a letter, but two days later called Macklin to notify him that the SEC would approve the system without the third market at start-up. Following that call, the NASD Executive Committee and the NASD Board of Governors voted to start NASDAQ with only OTC stocks.

NASDAQ began operation on February 8, 1971, with quotations for only nonlisted OTC securities. Eight weeks later, NASD began a test period with the inclusion of 32 listed stocks, each having at least two interested market makers in the third market. The test securities included two for which Shumate had requested listing. After expiration of the test period, NASD, with

SEC approval, made all listed stocks eligible for inclusion on NASDAQ. Any such security is included when, as with an unlisted security, the requisite number of market makers have properly requested its inclusion. Thus, it is the interest of individual market makers in the security which determines whether or not that security will be listed on NASDAQ. None of the defendants have any control over that interest.

## SHUMATE'S APPEAL

On this appeal Shumate has argued that the district court erred in directing a verdict against him on the two alleged antitrust violations. The first violation was a combination or conspiracy to exclude listed stocks from NASDAQ at the time the system commenced operation. The results of this conspiracy could only last the eight weeks between start-up of the system and the inclusion of the quotations on the system. The second was a conspiracy to ignore the listed securities once they had in fact become eligible for listing on NASDAQ and listed. To succeed in his lawsuit, Shumate must show injury from defendant's activities. The burden of Shumate's appeal is to show that there is sufficient evidence of injury in the record to present a jury question.

## SHEARSON, HAMMILL & COMPANY, INC.

█ █ The district court found no evidence to associate Shearson, Hammill & Company, Inc. with the alleged conspiracy. The only connection Shearson, Hammill had with the activities from which these suits arose was that one of its officers, Gordon L. Teach, an individual defendant here, was Chairman of the Board of Governors of NASD during the period involved. His actions were taken as Chairman of NASD and not as an officer of Shearson, Hammill. In order for Shearson, Hammill to be liable for Teach's actions, it would have been necessary for him, in furtherance of the alleged conspiracy, to have been acting within the scope of his authority as a Shearson, Hammill officer. *See* House-

hold Goods Carriers' Bureau v. Terrell, 417 F.2d 47, 54 (5 Cir. 1969), modified, 452 F.2d 152 (5 Cir. 1971) (en banc), appeal after remand, 494 F.2d 16 (5th Cir. 1974); United States v. Hilton Hotel Corp., 467 F.2d 1000, 1004–1007 (9th Cir. 1972), cert. denied, 409 U.S. 1125, 93 S.Ct. 938, 35 L.Ed.2d 256 (1973). Shumate offered no credible evidence from which the jury could have imputed Teach's activities to Shearson, Hammill, and the district court was correct in directing a verdict against Shumate as to Shearson, Hammill, and in rejecting Shumate's factually unsupported *respondeat superior* argument to hold Shearson, Hammill liable for any of Teach's acts.

## LAW

█ Except as to Shearson, Hammill, the district court concluded that there was enough evidence presented by Shumate at the trial to make a jury question as to the existence of a conspiracy to exclude the listed securities. Assuming there to be a violation of the antitrust laws, however, the plaintiff concededly must show that he has been injured in his business or property as a prerequisite to a private suit:

> "Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."

15 U.S.C.A. § 15; *see* Hobart Brothers Co. v. Malcolm T. Gilliland, Inc., 471 F.2d 894, 901 (5th Cir.), cert. denied, 412 U.S. 923, 93 S.Ct. 2736, 37 L.Ed.2d 150 (1973); Gorham & Johnson, Inc. v. Chrysler Corp., 308 F.2d 462, 469 (5th Cir. 1962), cert. denied, 372 U.S. 912, 83 S.Ct. 725, 9 L.Ed.2d 719 (1963). The focus of the appeal from the district court's refusal to submit the claim based on the first alleged conspiracy to the jury therefore

turns on whether the district court was correct in deciding that there was no issue of fact as to the plaintiff's claim of injury in his business or property.

As to the second alleged conspiracy, the ignoring of the third market once listed security quotations were allowed on NASDAQ, the district court found a lack of proof as to the conspiracy itself. Partly in response to this situation, Shumate has shifted his argument on appeal, asserting now that there was only one continuing conspiracy and therefore, the sufficiency of the evidence found by the trial court to make a jury question as to the first alleged conspiracy is *ipso facto* sufficient to produce a jury issue as to the second alleged conspiracy. We need not consider the propriety of this shift in theories from the trial court to the appellate court. *Cf.* Virtue v. Creamery Package Manufacturing Co., 227 U.S. 8, 38–39, 33 S.Ct. 202, 57 L.Ed. 393 (1913); Lamb Enterprises, Inc. v. Toledo Blade Co., 461 F.2d 506, 515–516 (6th Cir.), cert. denied, 409 U.S. 1001, 93 S.Ct. 325, 34 L.Ed.2d 262 (1972). Whatever the nature of the alleged conspiracy, whether two separate ones or one single one, injury is the *sine qua non* for stating a cause of action. Since the district court found a lack of sufficient proof of injury from the second conspiracy as well as a lack of proof of the conspiracy itself, we affirm the district court's decision that the plaintiff failed to present a jury question as to any antitrust claim. Thus, we need not review the decision that there was insufficient evidence to present to the jury as to whether there was a conspiracy in violation of the antitrust laws.

■ In evaluating the district court's directed verdict, we must keep in mind the dictates of Boeing Co. v. Shipman, 411 F.2d 365, 374 (5th Cir. 1969), in light of the charitable view we have taken in treble-damage cases and the difficulties of proof facing a plaintiff who must try to prove what would have accrued to him in the absence of the defendant's anticompetitive practice. Lehrman v. Gulf Oil Corp., 464 F.2d 26, 46 (5th Cir.), cert. denied, 409 U.S. 1077, 93 S.Ct. 687, 34 L.Ed.2d 665 (1972), appeal after remand, 500 F.2d 659 (5th Cir. 1974). Nonetheless, although we are generally lenient as to evidence required to show the amount of damages in antitrust matters once liability is determined, courts do not permit the fact of damage necessary to prove liability to be based on speculation. Household Goods Carriers' Bureau v. Terrell, 452 F.2d 152, 159 (5 Cir. 1971) (en banc), appeal after remand, 494 F.2d 16 (5th Cir. 1974).

## INJURY FROM FIRST CONSPIRACY

■ Shumate alleged basically four types of injury: a trading volume increase less than he had anticipated under NASDAQ, lower annual profits because of his inability to attract new salespersons, the loss of commissions on some orders placed in April and May of 1972 by a retirement fund, and the loss in August 1973 of a discretionary account for which he was paid an annual fee. None of these elements of injury is related to the ineligibility of listed stocks for the period where such stocks were not generally eligible, February 8, 1971, until October 18, 1971. Shumate did seek to have two listed securities placed on NASDAQ in the spring of 1971, in order to become a market maker in them, and they were included during the test period. But once they were listed, nothing indicates that Shumate attempted to make a market in them using NASDAQ. In fact, Shumate could not have used NASDAQ to become a market maker in those securities as he did not have a NASDAQ terminal in his office until early 1973. It is clear that Shumate presented nothing in the record, not even his own unsupported conclusions, to demonstrate any injury during the period that listed securities were excluded pursuant to the alleged conspiracy. In such a situation with *no* evidence of injury presented, the district court was undoubtedly correct in directing a verdict against Shumate on the first count.

## INJURY FROM SECOND CONSPIRACY

The district court also held there to be a lack of evidence sufficient for jury consideration of injury from the alleged conspiracy to ignore the third market listed on NASDAQ. The trial court viewed the evidence as showing only that stockbrokers in individual members of the stock exchanges, as individuals, ignored listed securities on NASDAQ, with no evidence to link their conduct to any conspiracy among the named defendants. *Cf.* Northern California Pharmaceutical Association v. United States, 306 F.2d 379, 388–391 (9th Cir.), cert. denied, 371 U.S. 862, 83 S.Ct. 119, 9 L.Ed.2d 99 (1962). But we need not consider the existence or nonexistence of any conspiracy between the defendants. A thorough review of the record on appeal has convinced us that the district court correctly determined that there was no evidence from which reasonable and fairminded persons could have found that any injury to Shumate resulted from the alleged practice.

The only evidence Shumate presented regarding his damages at trial was his own testimony, unsupported by any relevant data. Shumate, among other things, asserted to the trial court and to this Court on appeal that so much money and effort was expended to create NASDAQ that it is obvious that it was intended to increase trading volume, and consequently profits, of the individual members of NASD. Since he has not experienced this anticipated increase in profits, he asserts, he has obviously been damaged. With only his *ipse dixit* to establish the fact of damage, Shumate would have this Court find his testimonial speculation and contentions supply the basis for a jury issue as to the fact of damage. But more evidence than this is necessary to demonstrate that there has been injury before the jury can be allowed to consider the amount that would properly compensate him for such injury.

"Both the fact of damage, or causation, and the amount of damage are questions of sufficiency of the evidence, though the certainty of proof required on each issue differs. As the Supreme Court said in Story Parchment Co. v. Paterson Parchment Paper Co., 1931, 282 U.S. 555, 562, 51 S.Ct. 248, 250, 75 L.Ed. 544, 548,

> [T]here is a clear distinction between the measure of proof necessary to establish the fact that petitioner had sustained some damage and the measure of proof necessary to enable the jury to fix the amount. The rule which precludes recovery of uncertain damages applies to such as are not the certain result of the wrong, not to those damages which are definitely attributable to the wrong and only uncertain in respect of their amount."

Terrell v. Household Goods Carriers' Bureau, 494 F.2d at 20 (footnote omitted); *accord*, Hobart Brothers Co. v. Malcolm T. Gilliland, Inc., 471 F.2d 894, 902–904 (5th Cir.), cert. denied, 412 U.S. 923, 93 S.Ct. 2736, 37 L.Ed.2d 150 (1973). Shumate could not recover any amount of damage, where the jury could only speculate either as to its occurrence or as to its causal relationship to the anticompetitive activity. *See, e. g.*, Dailey v. Quality School Plan, Inc., 380 F.2d 484, 487–488 (5 Cir. 1967), appeal after remand, 427 F.2d 1080 (5th Cir. 1970). It is incumbent upon plaintiff to produce some credible evidence to support his various allegations of injury and its cause. Failure to do so makes a directed verdict correct. *See, e. g.*, Bigelow v. RKO Radio Pictures, Inc., 327 U.S. 251, 66 S.Ct 574, 90 L.Ed. 1040 (1946); Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 51 S.Ct. 248, 75 L.Ed. 544 (1931); Hobart Brothers Co. v. Malcolm T. Gilliland, Inc., *supra*.

We have examined the record for evidentiary support as to each of the four types of injury asserted by Shumate. *First*, Shumate alleged he experienced a lesser increase in trading volume than he had anticipated from NASDAQ. He presented no evidence to show that this lesser increase was related to the alleged conspiracy, which only affected the third

market segment of the OTC. He did not present any records of his own trades in the third market before or after NASDAQ became operational, or any projections of what he had expected from NASDAQ regarding the third market. Shumate produced some gross income figures which he did not even relate to the area in which the alleged conspiracy would have its effect, the third market. His general allegation of lesser increase in trading volume in the relevant market is simply not supported by any evidence.

*Second,* Shumate argues that he had lower annual profits due to his inability to hire additional salespersons. This argument, unsupported by relevant data, finds its sole support in his bare assertion that after NASDAQ was operational, but while the third market was being ignored, he was unable to hire any new salespersons. There was no testimony from any of the prospective salespersons that they chose not to work for Shumate because of the failure of the third market to develop more fully with the commencement of NASDAQ. Shumate's after-the-fact-therefore-because-of-it argument is especially weak considering the fact, adduced during his own testimony, that he had experienced much difficulty in finding associates well before NASDAQ's operation. Without some evidence that he could have employed additional salespersons if the third market had developed more expansively under NASDAQ, it is not necessary to consider whether Shumate's proof of the beneficial result of additional salespersons was sufficient to create a jury issue.

*Third,* plaintiff alleges the conspiracy made him lose the commissions on a number of individual transactions for the New York State Teachers' Retirement System. Two things are particularly relevant to this item of alleged injury: first, at the time these orders were placed, listed securities were eligible to be displayed on NASDAQ, but any particular security would be included only if more than one NASDAQ subscriber (a broker-dealer) were interested in dealing in the security in the third market, and second, Shumate did not subscribe to NASDAQ when the orders were placed. Thus, when the orders were placed Shumate did not attempt to execute them with the aid of NASDAQ and could not testify positively that had he attempted to do so, he would have been unsuccessful. Perhaps his failure to subscribe also contributed to his failure to present evidence that the securities for which the orders were placed were even on the NASDAQ system. Without proof that the securities were listed on NASDAQ, there could certainly be no reasonable inference drawn that they were being ignored. Shumate's argument boils down to this: had NASDAQ been fully competitive, he would have subscribed to it, and if he had subscribed to it and if the securities were listed he would have been able to execute the transactions in a manner otherwise unavailable to him. A jury could not reasonably draw the inferences necessary to reach this conclusion from the bare allegations in Shumate's testimony, devoid of supporting facts.

*Last,* Shumate alleged injury from his loss of an account which paid him a $25,000 annual fee in August of 1973, almost two years after listed securities were eligible for inclusion in NASDAQ. Other than Shumate's unsupported assertion that one of the proximate reasons for losing the account was the failure of NASDAQ to develop as he had thought it would, there is no evidence of the reason for the loss of the account. Shumate produced no data relating to transactions which he had attempted to make for the account, but as to which he had been frustrated by the alleged conspiracy. He did not produce any correspondence or testimony from the account client supporting Shumate's bare allegation that the failure of the third market to develop under NASDAQ had caused the withdrawal of the account from Shumate's business. Shumate did not even offer the details of the operation of the account, from which a jury might have

understood the reasoning from which his own conclusion was derived. In this instance, as in the other areas of alleged injury, Shumate simply failed to produce any relevant data from which the jury could find any damage.

## MISCELLANEOUS POINTS ON APPEAL

Shumate appeals other rulings of the district court, which, if error, might bear upon the correctness of the court's decision as to whether there were sufficient issues of fact for presentation to the jury.

### 1. Class Action

Shumate asserts that, regardless of the merits of his own claim, the district court should have allowed him to maintain the suits as class action representative for some 3000 members of NASD who are not members of NYSE or AMEX. The district court denied Shumate class action status because of its conclusion that, even if a conspiracy were proved, the controlling question as to liability was whether a class member had suffered injury. It opined that the difficulties likely to be encountered in maintaining the cases as class actions outweighed the benefits. The district court's decision is reviewable only for an abuse of discretion. *See* Johnson v. Georgia Highway Express, Inc., 417 F.2d 1122, 1123 (5th Cir. 1969). We find no abuse of discretion. This case is different from one where liability can be shown as to all class members, with only the amount of damage to be determined as to each. In this antitrust case the proof of injury to business or property of each class member is critical for the determination of defendants' liability to any individual. The district court was within its discretion in deciding that common questions of fact do not predominate. *See* F.R.Civ.P. 23(b)(3); Smith v. Denny's Restaurants, Inc., 62 F.R.D. 459 (N.D.Cal.1974); Kinzler v. New York Stock Exchange, 62 F.R.D. 196 (S.D.N.Y.1974); Gneiting v. Taggares, 62 F.R.D. 405 (D.Idaho 1973).

### 2. Elimination of Collateral Claims

Shumate also attacked the district court's refusal to allow plaintiff to interject into these cases the issues related to the stock exchanges' anti-rebate rules, and the court's refusal to consolidate with these cases another case which plaintiff has pending on that issue. Again our review is limited to a determination of whether the district court abused its discretion on these matters. Considering that another suit in which Shumate was an active member of the plaintiff class had already been tried on these issues and was *sub judice* in the District Court for the Eastern District of Wisconsin, *see* Thill Securities Corp. v. New York Stock Exchange, 433 F.2d 264 (7th Cir. 1970), cert. denied, 401 U.S. 994, 91 S.Ct. 1232, 28 L.Ed.2d 532 (1971), that Shumate and his counsel independently admitted prior to trial that the issue in plaintiff's nonconsolidated suit was separate from the issues in these suits, and further, that there were numerous defendants in the nonconsolidated suit who are not parties to these suits, we see no abuse of discretion in the district court's decision to have plaintiff pursue the two claims separately.

### 3. Evidentiary Rulings

The district court did not err either in its evidentiary rulings on two voluminous exhibits offered by plaintiff or in its refusal to allow Shumate to introduce into evidence an SEC staff memorandum which alluded to legal opinions on the illegality of NASDAQ without listed securities. One of these exhibits was a bound volume containing all memoranda, letters and documents regarding the implementation of NASDAQ by NASD contained in SEC files. The other was a volume of several hundred pages of similar material from NASD's own files. The two large exhibits were first presented to the district court at the end of a trial day. Defense counsel reserved the right to object for irrelevance to any of the individual documents which comprised the exhibits.

The district court agreed to allow defense counsel to examine the exhibits overnight and to offer their objections the next morning. The next morning the court directed plaintiff's counsel to number each document and to offer each separately so that the court could rule on the admissibility of each separately. Nonetheless, Shumate failed to offer any documents in his case-in-chief. It was only after the court had ruled on defendants' directed verdict motions that plaintiff offered some of the individual documents into evidence, and even then plaintiff did not specifically identify which documents he was offering. The district court sustained defendants' objections. The particular documents plaintiff offered were merely general statements relating to the effect of NASDAQ on the third market and the desire of some NASD members to include more listed stocks. It was not demonstrated that they would have been admissible. *See* Standard Oil Co. of California v. Moore, 251 F.2d 188, 212–218 (9th Cir. 1957), cert. denied, 356 U.S. 975, 78 S.Ct. 1139, 2 L.Ed.2d 1148 (1958). Even had they been otherwise admissible, they did not relate to plaintiff's own situation and provided no facts to bolster plaintiff's inadequate proof of his own injury. Under such circumstance, we can find no abuse of the trial court's discretion.

Similarly, we sustain the district court's refusal to admit the portions of an SEC study referring to various legal opinions as to the illegality of NASDAQ under the antitrust laws if the listed securities were excluded. Those opinions were in no way related to alleged conspiracy between the defendants to these suits. The memorandum containing these opinions does not quote the NASD attorneys verbatim, but merely states the SEC's interpretation of discussions with NASD attorneys while the SEC and NASD were finalizing the terms of the NASDAQ system's approval by the SEC. Shumate argues that since the opinions expressed a belief that a possible violation of the antitrust laws could result from the operation of NASDAQ without the listed securities, and since a private antitrust violation requires injury, the opinions implicitly found injury from such action and are probative of the fact of damage. We agree with the district court that the memorandum references to the opinions were inadmissible. First, the opinions were clearly hearsay as to all defendants and without Shumate demonstrating that the defendants had vouched for their accuracy, the legal opinions would not have been admissible as an admission of a party opponent exception to the hearsay rule. *See* Sanitary Milk Producers v. Bergjans Farm Dairy, Inc., 368 F.2d 679, 686 (8th Cir. 1966); Standard Oil Co. of California v. Moore, 251 F.2d 188, 218 (9th Cir. 1957), cert. denied, 356 U.S. 975, 78 S.Ct. 1139, 2 L.Ed.2d 1148 (1958). Second, while in some circumstances opinions offered to a Government agency might be admissible not for the truth of the matter stated therein, but to show purpose and character of certain acts alleged to constitute an antitrust violation, *see* Lamb Enterprises, Inc. v. Toledo Blade Co., 461 F.2d 506, 515–516 (6th Cir.), cert. denied, 409 U.S. 1001, 93 S.Ct. 325, 34 L.Ed.2d 262 (1972), here the opinions could not have served even that purpose because they related to an antitrust violation by the members of NASD as a group, and not the alleged violation of NASD as an entity in conspiracy with the other defendants in this suit. *Cf.* Northern California Pharmaceutical Association v. United States, 306 F.2d 379, 388–391 (9th Cir.), cert. denied, 371 U.S. 862, 83 S.Ct. 119, 9 L.Ed.2d 99 (1962). Third, even if the opinions had been admissible to show the conspiracy, they would not have affected the directed verdict against Shumate which was based on his failure to produce evidence of any injury. The opinions expressed to the SEC, a Government agency, did not state that the possible violation of the antitrust laws would give rise to a private claim and therefore, did not address the possibility of injury. Even if they could be viewed as intimating the possible existence of a private claim,

there is nothing to show that any possible injury was to Shumate's business, which is the only injury for which Shumate could recover. In addition, it is not appropriate to admit a legal opinion as to a fact which is within the competency of the jury itself to determine from evidence presented, and not requiring special expertise. *See* McCormick on Evidence, § 13 (2d ed. 1972).

The trial court did not abuse its discretion in denying Shumate leave to file an amended complaint or in taxing costs against plaintiff. The need for the amended complaint was obviated by the filing of the second suit and its consolidation for trial with the first suit. The amended complaint, even if allowed, would not have affected the fate of Shumate's claims. The particulars of the costs so taxed are not here considered, as the record indicates that the district court has not ruled thereon.

Affirmed.