**Clifton M. McCLURE, Plaintiff-Appellee,**

v.

**UNDERSEA INDUSTRIES, INC., a corporation d/b/a Scubapro and Johnson Diversified, Inc., a corporation, Defendant-Appellant.**

No. 80-7488.

United States Court of Appeals,
Eleventh Circuit.

March 29, 1982.

Bradley, Arant, Rose & White, James W. Gewin, Birmingham, Ala., for Undersea Industries, Inc.

Philip A. Geddes, Huntsville, Ala., for plaintiff-appellee.

Before MORGAN, KRAVITCH and HENDERSON, Circuit Judges.

HENDERSON, Circuit Judge:

Undersea Industries, Inc. (USI), appeals from an adverse jury verdict in an antitrust action initiated by the appellee, Clifton M. McClure. We conclude that the briefs and the record do not support the claim that McClure was injured as a result of the alleged boycott conspiracy, and, thus, we reverse.

The appellee, Clifton McClure, is a retail distributor of scuba diving equipment. He owns and operates a professional dive shop in Huntsville, Alabama, under the name of Aquaspace. He is assisted in this effort by his wife, Bobbie McClure. The appellant, USI, is a manufacturer of diving equipment marketed under the name, Scubapro. Those selected as dealers are authorized to sell, repair and service Scubapro products. McClure's application for Scubapro authorization was granted in 1968 and he began to buy equipment directly from the USI California factory. For the next several years, McClure made substantial purchases from USI. It was not until 1976 and 1977 that he decreased his procurement of diving apparatus from the appellant.

In 1975, McClure became involved in developing a new diving equipment manufacturing company called Sub Aquatic Systems (SAS). He carried both SAS and Scubapro products in his Huntsville store. In 1976 and 1977, the relationship between McClure and USI deteriorated and in June, 1977, USI management terminated McClure as an authorized dealer of Scubapro products. This cancellation meant that McClure could no longer purchase equipment directly from the Scubapro factory nor could he offer to his customers the full benefits of USI's warranty program. Under this warranty system, any repair work performed by an unauthorized dealer voided the warranty to the consumer and consequently, customers who purchased from unauthorized dealers were, at times, referred by the company to authorized dealer for service. Also, it was more difficult for an unauthorized dealer to secure spare parts or manufacturer's manuals on repair.

Soon after McClure received word of his termination, he made arrangements to purchase Scubapro equipment from two authorized dealers. Over the next few months, he purchased equipment from several dealer sources and had offers from other dealers to sell him any Scubapro equipment he required. However, in December, 1977 and January, 1978, the appellee did contact several authorized dealers who refused to sell to him. Then, on February 2, 1978, McClure filed this lawsuit against USI.[1]

The complaint principally charged: (1) that USI terminated McClure's dealership as part of a conspiracy to restrain trade, prevent competition and monopolize the scuba equipment industry, 15 U.S.C. §§ 1, 2; (2) that USI engaged in a conspiracy to

---

1. The original complaint also named USI's parent corporation as a defendant, but the action against the parent was dismissed on July 28, 1978.

restrain trade by fixing prices and maintaining illegal territorial policies, 15 U.S.C. § 1; and (3) that the appellant and certain authorized dealers conspired to boycott McClure by refusing to sell him Scubapro equipment after his termination, 15 U.S.C. § 1. Record at 2. The case came on for trial and, after the close of the plaintiff's evidence, the district court granted USI's motion for a directed verdict on the monopolization and price fixing causes of action. Trial Transcript at 2535–7 (hereinafter cited as T.R.). The defendant's motion for a directed verdict on the boycott conspiracy charge was overruled, and the trial proceeded on this claim only. After the close of all the evidence, the court denied USI's renewed motion for a directed verdict. The jury returned a verdict in favor of McClure for $20,000.00 single damages, and the court awarded attorney's fees of $85,000.00. Thus, judgment was entered against USI in the total amount of $145,000.00. USI's motion for a judgment notwithstanding the verdict or a new trial was denied, and USI subsequently lodged this appeal.

 McClure alleges that USI violated § 1 of the Sherman Antitrust Act, 15 U.S.C. § 1, by entering into a post-termination conspiracy to boycott his purchase of Scubapro equipment. However, "before a Sherman Act violation becomes cognizable as a private civil remedy," liability must be established under § 4 of the Clayton Act, 15 U.S.C. § 15. *Alabama v. Blue Bird Body Co., Inc.*, 573 F.2d 309, 317 (5th Cir. 1978). Section 4 of the Clayton Act provides that a private party "who shall be injured in his business or property" due to an antitrust violation may recover treble damages plus costs and attorney's fees. 15 U.S.C. § 15. Hence, "[p]roof of a violation of the Sherman Act standing alone does not establish civil liability . . . ." *Blue Bird*, 573 F.2d at 317. Under § 4 of the Clayton Act, a private litigant must prove, in addition to an antitrust violation, "an injury to his business resulting from the defendant's wrongful actions," or the "fact of damage," and "some indication of the amount of damage done." *Terrell v. Household Goods Carriers' Bureau*, 494 F.2d 16, 20 (5th Cir.), *cert. dismissed*, 419 U.S. 987, 95 S.Ct. 246, 42

L.Ed.2d 260 (1974). *See also Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 114 n.9, 89 S.Ct. 1562, 1571, 23 L.Ed.2d 129, 143 n.9 (1969). The term "fact of damage" refers to causation and simply means "that the antitrust violation caused injury to the antitrust plaintiff." *Blue Bird*, 573 F.2d at 317. The "fact of damage" is a sufficiency of the evidence question and cannot be based on mere speculation. *Blue Bird*, 573 F.2d at 317; *Shumate & Co., Inc. v. National Association of Securities Dealers, Inc.*, 509 F.2d 147, 152 (5th Cir.), *cert. denied*, 423 U.S. 868, 96 S.Ct. 131, 46 L.Ed.2d 97 (1975). Although the defendant's illegal conduct need not be the sole cause of any alleged injury, the plaintiff must prove, "as a matter of fact and with a fair degree of certainty, that the defendant's illegal conduct materially contributed to the injury." *Terrell*, 494 F.2d at 20. *See Blue Bird*, 573 F.2d at 317.

As the Fifth Circuit Court of Appeals stated in *Shumate & Co., Inc.*, 509 F.2d at 152, "injury is the *sine qua non* for stating a cause of action" based on an antitrust conspiracy. Accordingly, we must initially determine if the evidence supports the claim that McClure's business suffered injury as a result of the purported boycott conspiracy. Before reaching this issue, attention should be directed to the exact posture of the case as it is before our court. As pointed out above, the district court directed a verdict on the claims of attempted monopolization and price fixing. The judge stated:

Therefore, the Court concludes that the claim of attempted monopolization fails under the evidence presented by the plaintiff, and that the defendant is entitled to a directed verdict of that claim advanced in Count II of the complaint.

With respect to the claim that defendant terminated the plaintiff as an authorized Scubapro dealer as part of a conspiracy to restrain trade, the Court is of the opinion that that claim is not supported by the credible evidence in the case. More particularly, the Court is impressed that if there were any evidence to support an inference that the defendant was guilty of a conspiracy to fix prices, there is a complete absence of any evi-

dence that the plaintiff was injured in his business thereby.

Therefore, the Court holds that the defendant is entitled to a directed verdict with respect to the claim advanced in Count I of the complaint.

T.R. at 2535–6. Therefore, this appeal does not involve the legality or illegality of McClure's termination or any injury resulting from that termination. The only dispute on appeal is the evidentiary support for the existence of a boycott conspiracy after the termination was effected and the damages flowing from this post-termination boycott conspiracy.[2] The trial judge stated the issue in his charge to the jury as follows:

Specifically, the plaintiff claims that the defendant, U.S.I., entered into a combination or conspiracy in restraint of trade with various dealers of Scubapro equipment; in other words, its own dealers, and that such combination or conspiracy had the effect of boycotting the plaintiff, Mr. McClure, by precluding the plaintiff from purchasing Scubapro equipment from other dealers, thereby unreasonably restraining interstate trade and commerce within the sport diving industry.

T.R. at 3277.

. . . .

If you find that plaintiff has met its burden of proof and established every required element of the claimed or alleged violation, there remains a final element which plaintiff must prove before Defendant U.S.I. may be held liable for any of the charges plaintiff has made. You must also be satisfied by a preponderance of the evidence that the alleged conspiracy was material in causing concrete and determinable injury to plaintiff's business. Plaintiff must also provide some indication of the amount of damage already done.

T.R. at 3288.

In his brief, McClure evidences a misunderstanding of the damages issue. He ar-

gues that his business was damaged because the Scubapro franchise was cancelled and emphasizes the loss of sales growing out of this termination. However, the termination issue was disposed of by a directed verdict in the district court,[3] and injury from the termination is irrelevant on this appeal. Again, we are only concerned with damages resulting from an alleged conspiracy to preclude McClure's purchase of Scubapro products after the cancellation of his authorization.

■ Even if McClure was in fact prevented from buying Scubapro equipment from certain authorized dealers, the record fails to support a reasonable inference that he was injured thereby. Soon after his termination in June, 1977, McClure had made arrangements with two authorized dealers, Bill Hardy of San Diego, California, and Mike Maynard of Little Rock, Arkansas, to buy equipment at dealer cost. T.R. at 667–74, 1311, 2525, defendant's exhibits 45–47. In the ensuing months, he also purchased equipment at dealer cost from two other authorized dealers—Kim Stalvey in Nashville, Tennessee, and Donnie Reece in Fort Worth, Texas. McClure's supply was uninterrupted. T.R. 671, 1301–02, 1310–12, 2260. These dealers placed no limits on the amount of equipment McClure could purchase and sold at dealer cost, the price McClure had paid to the USI factory. T.R. 1311–12, 2260–61, 2525, defendant's exhibit 45. In fact, McClure procured more from these dealers in the latter half of 1977 than he had purchased from the factory in the first four months of that year. Defendant's exhibits 46–47, plaintiff's exhibit 2. Although he purchased from the factory on a COD basis, after the termination some dealers sold him equipment on credit or by other financial arrangements of his choice. T.R. 673, 1235–36, 2260–61, defendant's exhibit 46. Appellee submits no evidence to show that the shipments from the dealers took longer than from the factory. In fact, shipments from Bill Hardy in San Diego required about the same length of time as

---

**2.** Both parties agreed, either in their briefs or at oral argument, that the conspiracy alleged is the post-termination conduct to boycott McClure's purchase of Scubapro equipment.

**3.** The appellee does not appeal the trial judge's order granting a directed verdict for USI on the first two claims.

did shipments from the USI factory. T.R. 1311, 1236–37, defendant's exhibit 82. While stating that they could not buy all they wanted from the existing dealer sources, McClure and his wife admitted that several other dealers had offered to sell them additional Scubapro products. Nonetheless, these additional offers were never pursued by the McClures. T.R. 668–70, 1312–13, 1344, 2161–63, 2446, 3120. Thus, McClure was able to purchase Scubapro equipment after the termination on very favorable terms. He was not injured by the refusal of the few alleged boycotting dealers to sell equipment. They could offer him nothing more than the selling dealers were already providing.

 The appellee strenuously asserts that he did suffer greatly in his business by reason of losing access to Scubapro's very good warranty program. He attempts to show that sales and profits were lost as a result of his inability to offer warranty service or repair. Even if these contentions are true, which are strongly contested by the appellant,[4] they are not pertinent to the precise issue on appeal. Injury due to a company-promulgated warranty policy is not related to damage from a conspiracy to boycott McClure's Scubapro purchases. The denial of warranty access, if indeed it did occur, was dictated by a restrictive company policy and was effectuated by the termination of McClure's Scubapro authorization. A challenge to the policy itself or to the cancellation of the dealership is the proper method to reach this issue. A decision between certain authorized dealers and the company to boycott McClure's purchases has nothing to do with the denial of warranty services. The alleged boycotting dealers could not offer McClure any additional warranty protection. If, in fact, they had all sold products to McClure, his situation with respect to the warranty would have been no different. Only a change in company policy or a re-authorization of McClure as a Scubapro dealer could have reversed or prevented the injury. There is

a complete absence of evidence, other than McClure's and his wife's own allegations, to infer injury specifically from the alleged boycotting dealers' refusal to sell. There is no evidence showing the fact or the amount of damage from his inability to procure certain products or from inconveniences in the shipping or credit arrangements available to McClure after the termination. Accordingly, since the evidence fails to support a reasonable inference of injury, the jury verdict must be reversed. *See Fairley v. American Hoist & Derrick Co.*, 640 F.2d 679, 681 (5th Cir. 1981); *Shumate & Co.*, 509 F.2d at 153–55. In view of this conclusion, there is no need to review the appellant's other assignments of error.

The judgment of the district court denying the appellant's motion for judgment notwithstanding the verdict is

REVERSED.

---

4. One dealer-supplier, Mike Maynard, testified that he filled out the warranty cards for McClure and sent them to the USI factory in his, Maynard's, own name. T.R. 2527 28.

Also, Dick Bonin, the president of USI, testified that unauthorized dealers may repair the Scubapro regulators without jeopardizing the warranty. T.R. at 3060–65.