Sidney B. BROYER

v.

The B. F. GOODRICH COMPANY.

Civ. A. No. 75–2288.

United States District Court,
E. D. Pennsylvania.

June 3, 1976.

Peter M. McGonigle, Gilfillan, Gilpin & Brehman, Philadelphia, Pa., for the plaintiff.

Stewart Dalzell, Henry W. Sawyer, III, Edward M. Posner, Drinker, Biddle & Reath, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

HANNUM, District Judge.

Presently before the Court is defendant's motion to dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Defendant, The B. F. Goodrich Company (BFG), contends that the complaint, which purports to frame a violation of the federal antitrust laws, fails to state a claim upon which relief can be granted, and that the Court is without subject matter jurisdiction because the plaintiff, Sidney B. Broyer, lacks standing to bring the suit.

For the purpose of a motion to dismiss, the material allegations of the complaint are taken as admitted, and the complaint should not be dismissed unless it appears that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The Federal Rules of Civil Procedure do not differentiate between antitrust actions and other types of civil proceedings; thus, notice pleadings suffice to state a claim. *Brett v. First Federal Savings & Loan Assoc.,* 461 F.2d 1155 (5th Cir. 1972); *Control Data Corp. v. International Business Machines Corp.,* 421 F.2d 323 (8th Cir. 1970). Furthermore, the Supreme Court has indicated that antitrust complaints should be liberally construed. *Radovich v. National Football League,* 352 U.S. 445, 453, 77 S.Ct. 390, 1 L.Ed.2d 456 (1957).

### FACTS AS ALLEGED IN THE COMPLAINT

This action developed from an employment personnel dispute. The plaintiff, a

former employee of BFG, asserts in an inartfully drawn complaint that he was injured by certain anticompetitive activities of BFG in violation of section 1 of the Sherman Act, Title 15 U.S.C. § 1. From March 1971 until July 1974, plaintiff was employed either as territory manager or special accounts representative for BFG in the Philadelphia area, handling the accounts of numerous tire dealers including Hub Tire Company, Joseph Walsh Tire Company, and Reliable Tire Company. Besides supervising these accounts, plaintiff had authority to request price discounts and, in certain circumstances, to set prices; as a result, he was familiar with BFG's pricing system and its application to various Philadelphia area tire dealers.

This action derives from two civil antitrust actions brought against BFG by two tire dealers under plaintiff's supervision. In May 1974, Joseph Walsh Tire Company filed an action, which is basically a Robinson-Patman case, alleging that certain of its large competitors received lower prices from BFG than it did, and that the purpose of BFG's discriminatory pricing system was to give Reliable Tire Company a monopoly of the distribution of defendant's tires in the Philadelphia area.[1] Early in 1975, Hub Tire Company instituted suit attacking BFG's program of direct sales to large, multi-state consumers on the theory that such direct sales violate sections 1 and 2 of the Sherman Act, section 3 of the Clayton Act, and section 2(a) of the Robinson-Patman Act.[2]

Plaintiff's alleged involvement with these suits was that in 1974 he informed his superiors at BFG of the imminent Hub litigation, and that at a meeting with defendant's personnel and lawyers on October 23, 1974, he "explained the pricing system of BFG as it applied to Walsh and Reliable to the great displeasure of the BFG personnel present."[3] Shortly thereafter, on November 15, 1974, defendant terminated plaintiff's employment.[4] Although he was variously informed that his discharge was due to a reduction in staff and because of his poor sales record, plaintiff asserts that the real motivation behind his termination was his:

> knowledge of the anti-trust violations of B. F. Goodrich and that it was an effort to discredit his testimony as a witness in the Walsh and Hub litigation and was, therefore, directly related [to] B. F. Goodrich's anti-trust violations and in furtherance of B. F. Goodrich's anti-trust conspiracies.[5]

Pursuant to Title 15 U.S.C. § 15, Sidney Broyer seeks treble damages for injuries allegedly sustained as a result of his discharge.

## STANDING TO SUE

In the instant motion to dismiss the complaint, BFG asserts that plaintiff's claim pursuant to section 4 of the Clayton Act, Title 15 U.S.C. § 15, is not a justiciable controversy within the Court's jurisdiction because the plaintiff lacks standing to sue.[6] Section 4 of the Clayton Act states, *inter alia,* that:

> [a]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor . . . and shall recover threefold damages by him sustained.

Although this language is sweeping, the statute has been construed so as to provide standing only to those individuals whose protection is the fundamental purpose of the antitrust laws. *Malamud v. Sinclair Oil Corp.,* 521 F.2d 1142 (6th Cir. 1975); *In re*

---

1. *Joseph Walsh Tire Co. v. The B. F. Goodrich Co.,* Civil No. 74–1310 (E.D.Pa. filed May 24, 1974) (Walsh litigation).

2. *Hub Tire Co. v. The B. F. Goodrich Co.,* Civil No. 75–85 (E.D.Pa. filed Jan. 10, 1975) (Hub litigation).

3. Complaint, para. 11.

4. In July 1974, prior to his discharge, plaintiff was transferred from his position as territory manager to that of commercial salesman at a BFG store.

5. Complaint, para. 14.

6. *See Malamud v. Sinclair Oil Corp.,* 521 F.2d 1142 (6th Cir. 1975).

*Multidistrict Vehicle Air Pollution M. D. L. No. 31,* 481 F.2d 122 (9th Cir. 1973), *cert. denied,* 414 U.S. 1045, 94 S.Ct. 551, 38 L.Ed.2d 336 (1973); *Calderone Enterprises Corp. v. United Artists Theatre Circuit,* 454 F.2d 1292 (2d Cir. 1971), *cert. denied,* 406 U.S. 930, 92 S.Ct. 1776, 32 L.Ed.2d 132 (1972). Judicial approaches to standing under this statute have not been totally consistent, and the law in this area continues to develop,[7] but the intent has been constant. As the Supreme Court stated with evident approval in *Hawaii v. Standard Oil Co.,* 405 U.S. 251, 263 n. 14, 92 S.Ct. 885, 891, 31 L.Ed.2d 184 (1972), "[t]he lower courts have been virtually unanimous in concluding that Congress did not intend the antitrust laws to provide a remedy in damages for all injuries that might conceivably be traced to an antitrust violation."

■ To establish standing to maintain a civil antitrust action pursuant to section 4 of the Clayton Act, a plaintiff must meet a two-pronged test. First, the party must allege injury to his "business or property" within the meaning of the statute, and, second, he must allege causation—that the injury suffered was occasioned "by reason of" a violation of the antitrust laws.

■ Sidney Broyer meets the first requirement of the standing test. The "business or property" concept of section 4 of the Clayton Act is limited to "commercial interests or enterprises." *Hawaii v. Standard Oil Co., supra,* at 264, 92 S.Ct. 885. Although this restrictive interpretation prohibits many employee *qua* employee anti-

trust suits,[8] it is not a bar in this case as the injury alleged is the termination of employment as a territory sales manager and the concomitant loss of commissions and bonuses.[9] The loss of this type of employment is subsumed by the commercial enterprise classification of the statute as evidenced by the Supreme Court's approval of the Seventh Circuit's interpretation of "business or property" in *Roseland v. Phister Mfg. Co.,* 125 F.2d 417 (1942). *Hawaii v. Standard Oil Co., supra,* 405 U.S. at 264, 92 S.Ct. 885. The Court in *Roseland* held that this language covered the employment of a sales agent with an exclusive sales territory and an established clientele, and Sidney Broyer's position is analogous. *See also Dailey v. Quality School Plan, Inc.,* 380 F.2d 484 (5th Cir. 1967); *Nichols v. Spencer International Press, Inc.,* 371 F.2d 332 (7th Cir. 1967); *Kinzler v. New York Stock Exchange,* 62 F.R.D. 196 (S.D.N.Y.1974).

■■ Whether or not the plaintiff meets the causation requirement of the standing test is a more difficult question. As stated earlier, this prerequisite derives from the language of section 4 of the Clayton Act stating that the injury from which the suit is derived must result "by reason of" something forbidden in the antitrust laws. Courts have differed in their analytic techniques for dealing with this requirement, but generally the burden has been placed on the plaintiff to demonstrate that he was either "directly injured" by or in the "target area" of the alleged antitrust violation.[10]

7. *See* note 10, *infra.*

8. *See, e. g., Reibert v. Atlantic Richfield Co.,* 471 F.2d 727 (10th Cir. 1973), *cert. denied,* 411 U.S. 938, 93 S.Ct. 1900, 36 L.Ed.2d 399 (1973) (draftsman and research technician who was discharged as a result of an allegedly illegal merger lacked standing).

9. Complaint and Affidavit of Sidney Broyer.

10. For a comparison of these two disparate approaches for analyzing standing under section 4 of the Clayton Act, *see, In re Multidistrict Vehicle Air Pollution, supra,* at 126–29. In general terms, the "direct injury" or "secondary effect" doctrine is based on an examination of the relationship between the claimant and

the alleged antitrust violator to determine whether the injury is "remote" or "secondary," rather than "direct," or whether there is an intermediate person suffering a more primary harm. *See, e. g., Billy Baxter, Inc. v. Coca-Cola Co.,* 431 F.2d 183 (2d Cir. 1970), *cert. denied,* 401 U.S. 923, 91 S.Ct. 877, 27 L.Ed.2d 826 (1971) (franchisor whose royalties declined when its franchisees lost customers allegedly because of defendant's impermissible trade restrictions did not have standing); *Ash v. International Business Machines, Inc.,* 353 F.2d 491 (3d Cir. 1965), *cert. denied,* 384 U.S. 927, 86 S.Ct. 1446, 16 L.Ed.2d 531 (1966) (stockholder of companies whose trade was allegedly re-

Regardless of the analytic devise used, the purpose of this causation element is to provide relief only to those claimants slated by Congress for protection under the Clayton Act. A private plaintiff is not entitled to relief merely because an antitrust violation occurred:

> The basic and underlying purposes of the anti-trust laws [are] to preserve competition and to protect the consumer. Recovery and damages under the anti-trust laws is available to those who have been directly injured by the lessening of competition and withheld from those who seek the windfall of treble damages because of incidental harm. *In re Multidistrict Vehicle Air Pollution, supra,* at 128. *See also Calderone Enterprises Corp., supra,* at 1295.

It is, of course, this policy rationale which should govern the determination of each case rather than the mechanical application of any particular analytic technique.

The difficulty in determining whether or not the plaintiff complies with the causation requirement of Title 15, U.S.C. § 15 derives from the language of the inartfully drawn complaint which creates uncertainty as to the precise nature of the plaintiff's claim. As stated earlier, Sidney Broyer avers that his discharge was "an effort to discredit his testimony as a witness in the Walsh and Hub litigation." Read literally, this allegation fails to comply with the causation requirement of sec-

tion 4 of the Clayton Act. Although there may be a state law cause of action for breach of contract, there is nothing in the antitrust laws which forbids either litigation or the discharge of employees in anticipation of litigation. As presented, the termination of plaintiff's employment does not derive from BFG's alleged antitrust violations which comprise the basis of the Hub and Walsh lawsuits; rather, the discharge results from the fact of the litigation itself. Such an injury is not "direct" or within the "target area" of the alleged anticompetitive activities of BFG, but is, at best, a "secondary effect" injury.[11]

However, in memoranda filed in opposition to defendant's motion to dismiss, the plaintiff asserts that his claim is not based on the theory that an employee's discharge in anticipation of litigation is a violation of the antitrust laws; rather, his claim is that he was directly injured by the anticompetitive activities of BFG alleged in the Walsh and Hub suits. Sidney Broyer asserts in an affidavit that just as the tire dealers were harmed by BFG's practices of price discrimination and exclusion of some dealers from bulk sales, he was injured by the loss of commissions and bonuses and the eventual loss of his employment.

Under this theory, the plaintiff could have standing to sue under section 4 of the Clayton Act. Courts have consistently held that salesmen, dependent on commission sales, have standing to sue their employers

---

strained by defendant's monopolistic practices lacked standing. *See also Langsam v. Beam,* 1975 Trade Cases ¶ 60,552 (E.D.N.Y.1975).

The "target area" analysis requires a determination as to whether or not the claimant's injured commercial enterprise was in the target area of the economy in which the defendant's antitrust violation eliminated competition. *Conference of Studio Unions v. Loew's, Inc.,* 193 F.2d 51, 54–55 (9th Cir. 1951), *cert. denied,* 342 U.S. 919, 72 S.Ct. 367, 96 L.Ed. 687 (1952). *See, e. g., In re Multidistrict Vehicle Air Pollution, supra,* (farmers alleging damage to crop yields from defendant's alleged conspiracy to eliminate competition in the development of automotive air pollution control devices lack standing). Courts adopting the target approach state, with some justification, that the Supreme Court's decision in *Perkins v. Standard Oil Co.,* 395 U.S. 642, 89 S.Ct. 1871, 23

L.Ed.2d 599 (1969), is supportive of their position.

The Sixth Circuit has rejected both of these approaches, and applies the standing test developed by the Supreme Court in *Assoc. of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970), to section 4, Clayton Act cases. *Malamud v. Sinclair Oil Corp., supra.*

11. This discharge situation is analogous to cases holding that a seller's refusal to deal in reprisal for a customer's participation in antitrust litigation against the seller is not in itself an antitrust violation. *Dart Drug Co. v. Parke, Davis & Co.,* 120 U.S.App.D.C. 79, 344 F.2d 173, n.6 (D.C.Cir.1965); *House of Materials, Inc. v. Simplicity Pattern Co.,* 298 F.2d 867 (2d Cir. 1962).

whose anticompetitive activities affect their livelihood. *Daily v. Quality School Plans, Inc., supra* ; *Roseland v. Phister Mfg., Co., supra.* Such salesmen are:

> quasi-businessmen operating in a market carved out by their own aggressiveness and salesmanship qualities. Thus when their employers engaged in anti-competitive practices, the employees were directly injured by these violations. *Reibert v. Atlantic Richfield Co.*, 471 F.2d 727, 730 (10th Cir. 1973), *cert. denied*, 411 U.S. 938, 93 S.Ct. 1900, 36 L.Ed.2d 399 (1973).

Sidney Broyer's affidavit and memoranda indicate that he may be such a quasi-businessman who suffered the requisite injury to entitle him to sue BFG pursuant to Title 15 U.S.C. § 15, but his complaint does not presently allege a permissible claim.

### FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

██ The defendant asserts that the complaint is defective not only because of the plaintiff's lack of standing, but because the complaint fails to state a claim upon which relief can be granted. Antitrust complaints must be construed liberally; nevertheless, they still must set forth allegations adequate to show a violation of the antitrust laws. *Penn Galvanizing Co. v. Lukens Steel Co.*, 65 F.R.D. 80 (E.D.Pa. 1974); *Keco Industries, Inc. v. Borg-Warner Corp.*, 334 F.Supp. 1240 (M.D.Pa.1971).

██ The instant complaint is deficient. The plaintiff's claim is based on an alleged violation of section 1 of the Sherman Act, 15 U.S.C. § 1, but the complaint does not allege any contract or combination in restraint of trade, nor does it allege any restraint of interstate commerce.[12] Thus, defendant's motion to dismiss the complaint must be granted.

Nevertheless, as discussed above, plaintiff's affidavit and legal memoranda indicate that he may be able to prove a set of facts supportive of an antitrust claim with jurisdiction founded on section 4 of the

Clayton Act; hence, the complaint is dismissed without prejudice. The plaintiff is granted leave to file an amended complaint in order to attempt to correct the deficiencies of the original and to particularize more carefully the factual allegations of his claim. *Austin v. House of Vision, Inc.*, 385 F.2d 171 (7th Cir. 1967); *Sidebotham v. Robison*, 216 F.2d 816, 826 (9th Cir. 1954); Wright & Miller, Federal Practice and Procedure: Civil § 1357 (1970).

---

12. Paragraph 8 of the Complaint makes reference to the *Walsh* litigation, but there is no indication of any intent to incorporate that complaint by reference.